BESSIE L. SLEEPER *vs.* ARTHUR M. PARK & others, trustees.
JOSEPH W. SLEEPER *vs.* SAME.

Middlesex.     January 21, 1919. — February 27, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Agency*, Existence of relation.     *Partnership.*     *Negligence*, Of one controlling real estate.

In an action against the trustees of a building association, who held the houses and other property belonging to the association under a declaration of trust which created a partnership, for personal injuries sustained by the plaintiff from a fall in descending a staircase in one of the houses of the defendants when she was being shown a tenement in the house by one of the defendants who was the managing trustee, it appeared that the defendants had agreed to sell the house to a certain person and the managing trustee testified "that the trustees told the man who had signed the agreement for purchase that they would show the tenement and if they found a tenant satisfactory to him he could accept him; that they would show the tenement and the building and if they found any one that was agreeable to them they would let them have it." The renting of houses owned by the defendants was authorized expressly by the declaration of trust. The plaintiff testified that she had no knowledge of the agreement for the sale of the house. *Held,* that the jury could find that the managing trustee in showing the house to the plaintiff acted for all the defendants and that he was not the agent for that purpose of the man who had agreed to buy the house, and that upon such a finding the plaintiff's rights would not be affected by the agreement for the sale of the house.

In the case above described, in which the plaintiff's injuries were sustained before the enactment of St. 1914, c. 553, it appeared that the house in which the plaintiff was invited to inspect the tenement was not fully completed, and the jury could have found that the managing trustee assured the plaintiff that the stairs on which the plaintiff fell were safe to pass over and that the cleats on them were

nailed properly. The plaintiff testified that she asked the managing trustee whether the stairs were perfectly safe to go down and that he replied "Oh, yes . . . perfectly safe to go down, go down all right," that she did not know that the cleats were loose and that the managing trustee told her that "they were nailed down there, they were safe," that then she started to go down and when she stepped on the second or third stair from the top she felt one of the cleats slip from under her foot and she fell. The managing trustee testified that he examined all the cleats on the stairs immediately after the accident and that they were nailed firmly in place. *Held,* that the jury, who were not bound to believe the testimony of the managing trustee, could have found that one of the cleats was fastened improperly and that the plaintiff stepped on it relying on the assurance of the managing trustee, and that findings were warranted both that the plaintiff was in the exercise of due care and that the defendants were negligent in maintaining the stairs in a defective condition which could have been discovered and remedied by the exercise of reasonable care.

Two ACTIONS OF TORT, the first by a married woman for personal injuries sustained on September 2, 1913, by reason of a defective staircase in a two-tenement house belonging to the defendants at 15 Indiana Avenue in Somerville, which the plaintiff was visiting at the invitation of the defendants, and the second action by the husband of the plaintiff in the first action for consequential damages sustained by reason of her injuries. Writs dated November 11, 1914.

In the Superior Court the cases were tried together before *Hardy,* J. The material evidence on the question of liability is described in the opinion. At the close of the evidence the judge, at the request of the defendants, ruled that on the evidence the plaintiffs were not entitled to recover and ordered verdicts for the defendants. The plaintiffs alleged exceptions, which, after the death of *Hardy,* J., were allowed by *Jenney,* J., under R. L. c. 173, § 108.

*J. H. Morson,* for the plaintiffs.

*T. W. Proctor,* for the defendants.

CROSBY, J. The plaintiff in the first action seeks to recover for personal injuries received on September 2, 1913, while she was examining a house with a view to renting it. She hereafter will be referred to as the plaintiff. The second action is brought by her husband to recover consequential damages.

Ray R. Rideout, one of the defendants, was called by the plaintiff and testified that the defendants, as trustees, represented the stockholders of the "Somerville Home Building Association;" that at the time of the accident he was called the managing trus-

tee, and had most to do with the management; that the house in which the accident occurred was built by the trustees and "stood in their name and was under their control as such trustees."

The plaintiff testified that she called on Rideout at the office of the Somerville Home Building Association and asked him to show her a suite which she could rent and which could be purchased; that he said "We have some suites to rent and some houses to sell; I will show them to you." She further testified that he took her to the house which they entered and went up the back stairs, and afterwards he said: "We will have to go down the back stairs because the front ones are varnished;" that when they reached the head of the stairs (which were covered with cleats or strips of boards) she asked him if they were perfectly safe to go down and he replied, "Oh, yes, . . . perfectly safe to go down, go down all right;" that she did not know the cleats were loose; that Rideout told her "they were nailed down there, they were safe;" that she then started to go down and when she stepped on the second or third stair from the top she felt one of the cleats slip from under her foot and she fell.

The defendants offered in evidence an agreement in writing, dated July 23, 1913, in which they agreed to sell and one Coughlan agreed to purchase this house; and also, the deed of the property from them to Coughlan, dated September 23, 1913, and recorded on October 11, 1913. The defendant Rideout testified that the house was built by the trustees, and at the time of the accident it stood in their names and was under their control as such trustees; that they had the right to rent the property subject to the approval of Coughlan; "that the trustees told the man who had signed the agreement for purchase that they would show the tenement and if they found a tenant satisfactory to him he could accept him; that they would show the tenement and the building and if they found any one that was agreeable to them they would let them have it."

The declaration of trust under which the defendants held title to the real estate expressly authorized the trustees "to erect on the lands included in the trust estate dwelling houses and other structures," and "to lease the trust estate and any portion or portions thereof on such terms and for such length of time as they may deem expedient." The declaration of trust in legal effect created a partnership. *Frost* v. *Thompson*, 219 Mass. 360. *Dana*

v. *Treasurer & Receiver General,* 227 Mass. 562, 565. As a member
of the partnership and as managing trustee, Rideout could bind
the defendants while acting within the scope of his agency. He had
authority to rent the property of the association and bind his co-
trustees,— he testified he had "most to do with the management,"
— and in showing the house to the plaintiff he could have been
found to have been acting within the scope of his agency. *Garfield
& Proctor Coal Co.* v. *Rockland-Rockport Lime Co.* 184 Mass. 60.
The agreement made by the defendants to sell the property to
Coughlan would not prevent them from leasing or selling it to the
plaintiff. The title was in them and the house was in their ex-
clusive possession and control at the time the plaintiff was injured.
While Rideout in his cross and redirect examination testified that
the other trustees had nothing to do with the letting of the house,
the jury could have disbelieved this testimony and have believed
his statement, on direct examination, "that the trustees told the
man who had signed the agreement for purchase that they would
show the tenement and if they found a tenant satisfactory to him
he could accept him." The renting of houses owned by the de-
fendants being expressly authorized by the declaration of trust,
the jury could have found that, in showing the house to the plain-
tiff, Rideout acted for all the defendants, and that he was not the
agent of Coughlan for that purpose. Upon such a finding the
plaintiff's rights were not affected by the agreement made with
Coughlan of which she testified she had no knowledge. *Parker
& Young Manuf. Co.* v. *Exchange Fire Ins. Co.* 166 Mass. 484.
*Garfield & Proctor Coal Co.* v. *Rockland-Rockport Lime Co. supra.*
*Boucher* v. *New York, New Haven, & Hartford Railroad,* 196 Mass.
355. *Horn* v. *Dorchester Mutual Fire Ins. Co.* 199 Mass. 534.
*Marston* v. *Reynolds,* 211 Mass. 590.

The plaintiff having been expressly invited to inspect the tene-
ment, the defendants were charged with the duty of maintaining
it in a reasonably safe condition in accordance with the invitation.
The evidence shows that the house was not fully completed, and
while ordinarily one who enters an unfinished building does so at
his own risk, the jury could have found that Rideout assured the
plaintiff that the stairs were safe to pass over and that the cleats
were properly nailed; this evidence, if believed, would have war-
ranted a finding that she was in the exercise of due care and did

not assume the risk of injury. Although she could not abandon all care for her safety and would have been chargeable with knowledge of defects plain to be seen, it could not have been ruled that she was careless because she did not observe that one of the cleats was improperly fastened and might give way if she stepped on it. The jury properly might have found that she relied upon the assurance of Rideout and that she had a right to rely upon it at least until she knew or reasonably ought to have known that the stairs were unsafe to descend. *McKee* v. *Tourtellotte,* 167 Mass. 69. *Lord* v. *Wakefield,* 185 Mass. 214. *Dunphy* v. *Boston Elevated Railway,* 192 Mass. 415. *Jellow* v. *Fore River Ship Building Co.* 201 Mass. 464. It follows that it could not properly have been ruled that she was not in the exercise of due care or that she assumed the risk. *Berube* v. *Horton,* 199 Mass. 421. *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322. *Haley* v. *Lombard,* 207 Mass. 545. The case of *Cole* v. *L. D. Willcutt & Sons Co.* 218 Mass. 71, relied on by the defendants, is distinguishable from the present case: in that case there was no assurance that the place was safe.

The question of the defendants' negligence also was for the jury; they could have found that the cleat was improperly nailed and slipped under the plaintiff's foot when she stepped on it, and that the stairs were in a defective condition which could have been discovered and remedied by the defendants in the exercise of reasonable care. *Carriere* v. *Merrick Lumber Co. supra. Haley* v. *Lombard, supra. Callahan* v. *New England Telephone & Telegraph Co.* 216 Mass. 334. *Bennett* v. *Jordan Marsh Co.* 216 Mass. 550. *Levesque* v. *Charlton Mills,* 222 Mass. 305. *Windt* v. *Poli,* 228 Mass. 329. The jury were not bound to believe the testimony of Rideout when he stated that he examined all the cleats on the stairs immediately after the accident and that they were firmly nailed in place.

The evidence that the plaintiff was assured the stairs were safe distinguishes the case at bar from *Toland* v. *Paine Furniture Co.* 175 Mass. 476, relied on by the defendants.

*Exceptions sustained.*