[L. A. No. 9754. In Bank.—October 1, 1930.]

HENRY GOLDWATER, Appellant, v. WILLIAM OLT-
MAN et al., Defendants; CHARLES M. CONANT
et al., Respondents.

John W. Rankin, Kimball Fletcher and Albee & Watkinson for Appellant.

Schweitzer & Hutton, Edward Winterer, Winterer, Combs & Ritchie and H. F. Clary for Respondent.

Barrett & McConnell, *Amici Curiae,* for Appellant.

Manson & Allan, *Amici Curiae,* for Respondents.

David M. Burnett, John M. Burnett, Bohnett, Hill & Campbell and Edward M. Fellows, *Amici Curiae.*

THE COURT.—In order to permit a re-examination of the record herein and to give further consideration to several important problems involved on this appeal, a hearing was granted by this court in this case after decision of the District Court of Appeal, in and for the Second Appellate District, Division Two [285 Pac. 734], affirming the judgment of the trial court. Although we are of the opinion that the District Court of Appeal correctly states the law in reference to the principal point involved on this appeal, due to the importance of the questions involved and due to the fact that we differ from the District Court of Appeal in reference to several of the minor points involved, we deem it necessary to more completely state the law than was done by the District Court of Appeal. We adopt as part of this opinion the following statement of facts taken from the prevailing opinion of the District Court of Appeal:

"This appeal is taken from a judgment entered in favor of certain of the defendants following the granting of a

motion for nonsuit. An understandable presentation of the points presented for our consideration requires that we first review, as briefly as possible, the extremely voluminous pleadings in order that the issues between the plaintiff and various groups of defendants may be clarified.

"The second amended complaint, on which the plaintiff went to trial, sets forth ten causes of action. The first, omitting matters not germane to any point in controversy and dispensing with the legal verbiage, may be summarized as follows, the Roman numerals referring to the paragraphs as numbered in the pleading:

"II.

"Defendants Oltman and Morante are partners under the name of 'Morante Comedy Company';

"IV.

"All defendants other than Morante and Morante Comedy Company are partners under the name 'Drascena Productions';

"V.

"Between October 15 and December 1, 1920, Bloom Film Laboratories, a' copartnership (hereinafter for brevity referred to as 'Laboratories'), 'performed and furnished work, labor and materials, and expended money, all at the special instance and request of defendants' Morante, Oltman and Morante Comedy Company;

"VI.

"$3,822.94 was the reasonable value of this work, etc., of which $3,000 is unpaid;

"VII.

"February 9, 1921, an agreement was made between defendants Oltman and Morante and Morante Comedy Company as vendors and all the other defendants as vendees, whereby the business and property of the vendors was transferred to the vendees, who, as part of the consideration, 'promised, assumed and agreed to pay' to the Laboratories the debt from the vendor. This agreement, the plaintiff, on information and belief, alleges was in writing;

"VIII.

"January 3, 1921, one of the three partners composing the laboratories assigned his interests to the other two, who continued in business under the firm name, and on June 7,

1922, assigned and transferred the claim in suit to the plaintiff;

"IX.

"February 9, 1921, 'as evidence of said obligation of the defendants, excepting only . . . Morante and Morante Comedy Company,' the defendants other than these two executed and delivered to the Laboratories a note for $3,000, dated as above, payable April 15, drawing seven per cent interest and containing a provision for attorney's fees to be fixed by the court in case of suit for collection, and signed 'Drascena Productions, by Charles M. Conant, President'; $1,273.78 is a reasonable attorney fee;

"X.

"No part of the $3,000 'or any amount of principal, interest or attorney's fees, of said note' has been paid;

"XII.

"None of the defendants has filed certificates of co-partnership in the clerk's office.

"The second, third and fourth causes of action are identical with the first, with these exceptions: the second omits paragraph six, alleging reasonable value, and in lieu thereof alleges a promise to pay the Laboratories and a part payment, leaving a $3,000 balance unpaid; the third omits paragraphs five and six and substitutes an allegation of account stated between Morante Comedy Company and the Laboratories; and the fourth, with the same omissions as the third, alleges the original indebtedness to have been on a book account.

"The remaining causes of action all plead that the defendants other than Morante and Morante Comedy Company are members of and unit holders in an association known as 'Drascena Productions,' all the business of which is transacted and all the property of which is held in trust by five of the defendants as trustees under a declaration of trust of record in Los Angeles county, the provisions of which are, at least in part, set forth. It is further alleged that each of seventy-two named defendants owns the number of units or 'shares of trust certificates' set opposite his name in the complaint. Except for the omission of the allegation as to partnership of those defendants connected with Drascena Productions found in paragraph four of the first cause of action, and by reference thereto incorporated

in causes two, three and four, and the substitution therefor of the allegation as to nature and membership of Drascena Productions above referred to, causes five to eight, both inclusive, contain the same allegations as do causes one to four, respectively; that is to say, five corresponds to one, counting on the reasonable value of the work done, etc., as the basis of the original indebtedness; six corresponds to two, counting on the promise of Morante Comedy Company to pay, and so on.

"It is to be noted that while the first eight causes of action differ in the details above enumerated, they all set up the note executed by Drascena Productions. The ninth and tenth causes of action do not. The ninth cause of action alleges indebtedness to the Laboratories on the part of all the defendants on a book account showing $3,000 due and an assignment thereof to the plaintiff, while the tenth sets up an account stated between the Laboratories and all the defendants together with such assignment. With these exceptions the last two causes of action are but a repetition of the allegations of the first, with paragraphs four, six and nine, hereinabove briefed, omitted.

"Drascena Productions as a separate entity was not made a party to the action, the title of the same as it appears from the complaint listing all defendants other than Oltman and Morante as 'copartners doing business under the firm name and style of "Drascena Productions."' The transcript fails to show service on or appearance by some of the defendants, including Oltman, Morante and the Morante Comedy Company; others who were served defaulted, and their defaults were duly entered. Therefore, in further reference to 'the defendants,' we are to be understood as meaning only those who answered. These may be divided into four groups. Group one was composed of thirteen defendants on behalf of whom an answer was filed by attorneys Schweitzer & Hutton and included the defendant Lars A. Dahl, specially mentioned for reasons which will appear later. The answer of this group failed to deny or in any way refer to the tenth cause of action set up in the complaint. Group two also consisted of thirteen defendants, represented by attorney Winterer, and to these thirteen may be added defendants Apostol and Arnis, who had filed a separate answer by other counsel, but who were represented

at the trial by Mr. Winterer. Group three was composed of defendants I. N. and Nellie M. Thompson, on whose behalf an answer was filed by attorney C. O. Morgan. The record indicates that Nellie M. Thompson died pending the proceedings· and that attorneys Bordwell & Mathews appeared for the executor at the trial. The fourth group (if merely for the purpose of classification we may be permitted. to apply·the word 'group' to one individual) consisted of the defendant Howard·C. Galloupe, who appeared *in propria personam*. The answers of the three last mentioned groups included denials as to the tenth cause of action.

"During the progress of the trial, but before the plaintiff had rested his case in chief, the defendants composing groups one and two as·hereinabove designated moved the court 'that the plaintiff be required to· elect as to which, particular remedy and which particular cause of action in the amended complaint he will stand on.' This motion the court granted over the objection of the plaintiff, who thereupon elected to stand upon his fifth cause of action. No, such motion·was made on behalf of the other defendants.

"Upon the plaintiff resting his case, Mr. Winterer, upon behalf of the fifteen defendants whom he represented (group two), moved for a nonsuit. Mr. Clary, appearing for Schweitzer & Hutton, made a similar motion on behalf of twelve of the defendants represented by that firm, but did not so move on behalf of the defendant Dahl. No such motion was made as to defendants Galloupe and I. N. Thompson, or as to the executor of Nellie M. Thompson. True, the judgment recites that such a motion was made.on behalf of said executor, but the bill of exceptions contained in the transcript shows this to be incorrect. These two separate motions were granted and judgment was entered against the plaintiff and in favor of all of the defendants represented by Mr. Winterer, the twelve defendants represented by Schweitzer & Hutton, on whose behalf the motion had been made, and also in favor of the executor of the. last will and testament of Nellie M. Thompson, as to whom the bill of exceptions, certified by the trial judge as correctly setting forth all of the proceedings had during the trial, fails to show that any such motion was made."

It thus appears that the first eight causes of action are based on a promissory note executed by Drascena Produc-

tions. Before discussing the correctness of the ruling compelling plaintiff to elect upon which cause of action he desired to proceed, and before discussing the various questions of pleading involved, we deem it expedient to. discuss the liability of the members of this organization, all of them having been made defendants herein. The basic problem involved on this appeal involves the question as to whether the members or shareholders of Drascena Productions are personally liable on the promissory note executed by the president of that organization. Upon an examination of the "Agreement and Declaration of Trust," which is attached as an exhibit to the answer of the defendant represented by Schweitzer & Hutton, it appears that it was by that agreement that Drascena Productions came into existence. It appears from this declaration of trust that the parties thereto attempted to create a type of business organization usually referred to as a Massachusetts or business trust. Inasmuch as this court has never directly passed upon. the validity and legal incidents of this type of business organization, and inasmuch as it appears from the numerous briefs of *amici curiae* on ·file herein that there are a considerable number of such organizations in California, it seems well that some definite statement of their legal status be made at this time.

· These organizations, commonly denominated Massachusetts trusts, originated because of the hostility of some states toward corporations, and due to the desire of those organizing the same to secure some of the advantages that would be secured by incorporating without incurring the burdens and restrictions resulting therefrom. Due to statutory provisions in Massachusetts prohibiting corporations from dealing in real property, this type of organization reached its fullest development and most extensive use in that state, but, as will appear, has been adopted for use in many other states. The chief advantages of such organizations from the standpoint of those desirous of combining their wealth for business purposes are, that until recently they were, in most states, free from regulation, enjoyed freedom from corporation taxation, and its members enjoyed the freedom from personal liability that is imposed upon partners. This type of organization is nothing more than an attempt to use

the old common-law trust for the purpose of carrying on business enterprises.

Such a trust is brought into being by a declaration of trust, by the terms of which those desiring to invest their capital agree to the creation of a governing group of trustees, the powers and duties of this board being dependent on the terms of the trust agreement. The interest of each subscriber is evidenced by transferable certificates, similar to shares of stock in a corporation and, in this state, subject to the scrutiny of the corporation department. The organization does not dissolve as does a partnership upon the transfer of any share, nor upon the death, insanity or bankruptcy of a subscriber. The trust agreement usually provides that the trustees and not the subscribers are the owners of the property, and the trustees are given, in a true Massachusetts trust, complete control of the management of the business. In the trust agreement it is always provided that the subscribers are not personally liable for any of the acts of the trustees, a freedom from liability which, in this state, is even greater than that accorded to stockholders of corporations, except, since 1929, stockholders in limited corporations.

Generally stated, a trust of this nature is created wherever several persons transfer the legal title in property to trustees, with complete power of management in such trustees free from the control of the creators of the trust, and the trustees in their discretion pay over the profits of the enterprise to the creators of the trust or their successors in interest. As thus defined it is apparent that such a trust is created by the act of the parties and does not depend on statutory law for its validity. In the case of *Hecht* v. *Malley*, 265 U. S. 144, 146 [68 L. Ed. 949, 44 Sup. Ct. Rep. 462, 463], Mr. Justice Sanford referred to such organizations as follows:

"The 'Massachusetts trust' is a form of business organization, common in that state, consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided. These cer-

tificates, which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds.

"Under the Massachusetts decisions these trust instruments are held to create either pure trusts or partnerships, according to the way in which the trustees are to conduct the affairs committed to their charge. If they are the principals and are free from the control of the certificate holders in the management of the property, a trust is created; but if the certificate holders are associated together in the control of the property as principals and the trustees are merely their managing agents, a partnership relation between the certificate holders is created."

The leading case in Massachusetts where this so-called control test is fully discussed is *Williams* v. *Inhabitants of Milton,* 215 Mass. 1 [102 N. E. 355]. In that case the question involved was whether the Boston Personal Property Trust was to be taxed as a partnership or as a trust. The court, after discussing certain cases holding the particular trust therein involved created a partnership, and others where it had been held that a trust had been created, stated (102 N. E. 357) that the distinction "lies in the fact that in the former cases the certificate holders are associated together by the terms of a 'trust,' and are the principals whose instructions are to be obeyed by their agent who, for their convenience, holds the legal title to their property, the property is their property, they are the masters; while in *Mayo* v. *Moritz* [151 Mass. 481 (24 N. E. 1083), where it was held the instrument created a trust], on the other hand, there is no association between the certificate holders, the property is the property of the trustees and the trustees are the masters. All that the certificate holders in *Mayo* v. *Moritz* had was a right to have the property managed by the trustees for their benefit. They had no right to manage it themselves nor to instruct the trustees how to manage it for them."

The court then held that the Boston Personal Property Trust was a trust and not a partnership, stating (102 N. E., p. 358): "The certificate holders . . . are in no way associated together, nor is there any provision in the indenture

of trust for any meeting to be held by them. The only act which . . . they can do is to consent to an alteration or amendment of the trust created by the indenture or to a termination of it before the time fixed in the deed. But they cannot force the trustees to make such alteration, amendment, or termination. It is for the trustees to decide whether they will do any one of these things. All that the certificate holders ... . can do is to give or withhold their consent to the trustees taking such action.''

In another leading case decided shortly after *Williams* v. *Inhabitants of Milton, supra,* the same court said concerning the controlling features between a trust and a partnership: ''A declaration of trust or other instrument providing for the holding of property by trustees for the benefit of the owners of assignable certificates representing the beneficial interest in the property may create a trust or it may create a partnership. Whether it is the one or the other depends upon the way in which the trustees are to conduct the affairs committed to their charge. If they act as principals and are free from the control of the certificate holders, a trust is created; but if they are subject to the control of the certificate holders, it is a partnership.'' (*Frost* v. *Thompson,* 219 Mass. 360 [106 N. E. 1009, 1010]; see, also, *Horgan* v. *Morgan,* 233 Mass. 381 [124 N. E. 32]; *Sleeper* v. *Park,* 232 Mass. 292 [122 N. E. 315]; *Crocker* v. *Malley,* 249 U. S. 223 [2 A. L. R. 1601, 63 L. Ed. 573, 39 Sup. Ct. Rep. 270, see, also, Rose's U. S. Notes]; *Mayo* v. *Moritz, supra.*)

In those jurisdictions other than Massachusetts that have recognized this type of organization as a trust, it is the retention or nonretention of ultimate control by the shareholders which has been treated as a determining factor in the question as to whether the particular organization is a trust or a partnership. (*Betts* v. *Hackathorn,* 159 Ark. 621 [31 A. L. R. 847, 252 S. W. 602]; *Schumann-Heink* v. *Folsom,* 328 Ill. 321 [58 A. L. R. 485, 159 N. E. 250]; Sears on Trust Estates as Business Companies, 2d ed., 144.) By the weight of authority, where the trustees have complete control of the business, the creators of the trust are treated as are the *cestuis que trust* of an ordinary equitable trust, and are exempt from direct personal liability to the creditors of the business; but if the trustees are subject to the

control of the creators of the trust, the latter or their successors are liable as partners. (*Rand* v. *Morse,* 289 Fed. 339; *Hart* v. *Seymour,* 147 Ill. 598 [35 N. E. 246]; *Williams* v. *Boston,* 208 Mass. 497 [94 N. E. 808]; *Frost* v. *Thompson, supra.*)

The old idea was that any sharing in the profits of an unincorporated organization necessarily implied a partnership, but that concept was specifically repudiated as early as 1860 in the case of *Cox* v. *Hickman,* 8 H. L. Cas. 267 [11 Eng. Reprint, 431]. Most American jurisdictions have followed the English case and hold that mere profit sharing of itself does not necessarily create a partnership, and that therefore, for the reasons already discussed, if a true trust has been created, the certificate holders are not liable personally. Other jurisdictions, however, still adhere to the doctrine that profit sharing in an unincorporated company creates a partnership, and in these states, regardless of the degree of control, all certificate holders are treated as partners and held personally liable as such. The courts that adhere to this viewpoint contend that the only way to secure limited liability is by complying with the corporation or limited partnership law of the state. (*Thompson* v. *Schmitt,* 115 Tex. 53 [274 S. W. 554]; *Weber Engine Co.* v. *Alter,* 120 Kan. 557 [46 A. L. R. 158, 245 Pac. 143]; *State* v. *Hinkle,* 126 Wash. 581 [219 Pac. 41]; *Reilly* v. *Clyne,* 27 Ariz. 432 [40 A. L. R. 1005, 234 Pac. 35]; *McClaren* v. *Dawes etc. Co.,* 86 Ind. App. 196 [156 N. E. 584]; *Willey* v. *Hoggson,* 90 Fla. 343 [106 South. 408].)

In this state this court has never directly passed upon the problem as to whether certificate holders can secure freedom from personal liability by organizing a trust of the nature under discussion. Appellant strenuously contends that the case of *Old River Farms Co.* v. *Roscoe Haegelin Co.,* 98 Cal. App. 331 [276 Pac. 1047] (hearing denied by this court), laid down the rule that the certificate holders of such organizations are personally liable regardless of the degree of control exercised by the trustees. It is true that there is language in that decision indicating that to permit such limitation of liability is against public policy, but the language is merely *dicta.* When applied to the facts of that case it appears that the reasoning therein employed is correct. From an examination of the record

therein it appears that by the terms of the trust agreement the Roscoe Haegelin trustees were elected by the shareholders for one-year terms. Even in those states that recognize the limitation of liability of certificate holders it is generally held that the power to elect trustees and fill any vacancies in the board gives the certificate holders such ultimate control over the trustees that the organization will be treated as a partnership and not a true trust. (*Frost* v. *Thompson, supra; Horgan* v. *Morgan, supra;* 23 Columbia L. Rev. 423, 433–435.)    That rule appeals to us as the correct one to apply. If the trustees are subject to being removed by the shareholders, and are dependent upon them for election, it is apparent that the ultimate control of the organization rests in the shareholders. It therefore follows that the Haegelin case is only authority for the point that where the trustees are subject to election by the shareholders, the latter exercise ultimate control of the organization, and the organization is a partnership and not a true trust.

In the absence of controlling authority to the contrary, we can see no reason why such organizations with their limited liability should not be recognized in this state. It is true that the statutes of this state provide for limited liability in the case of limited partnerships and corporations, but we find nothing in those statutory provisions that manifests an intent to limit the types of business organizations which shall enjoy this privilege to the two types of business organizations enumerated. Section 2220 of the Civil Code expressly states that trusts in personalty may be created for any purpose for which a contract may lawfully be made. It is true that until 1929 certain limitations were placed upon the purposes for which trusts in real property might be created by section 857 of the Civil Code, but as stated before there was no such restriction in reference to trusts in personal property. (*Estate of Walkerly,* 108 Cal. 627; [49 Am. St. Rep. 97, 41 Pac. 772]; *Estate of Hinckley,* 58 Cal. 457, 482; *Toland* v. *Toland,* 123 Cal. 140 [55 Pac. 681].) Even the restrictions on trusts in real property have now been removed by a 1929 amendment to section 2220 of the Civil Code. It seems clear to us that the settled legislative policy of this state is to lay no restrictions against the formation of trusts in personalty, but rather to leave open to such organizations the conduct of any lawful

enterprise. The law of trusts is just as much a part of the legislative policy of this state as the law of limited partnerships and corporations. It is true that trusts historically were not used for the purpose of running large business enterprises and were a development of the equity courts. The law, however, is not static, but is ever growing and expanding, and in recent years this form of handling property has been extended to nearly every field of activity. (Sears on Trust Estates as Business Companies, 2d ed., sec. 19; Wrightington on Unincorporated Associations & Business Trusts, 2d ed., sec. 4.) Just because a new use is being made of the trust does not mean new principles of law are to be applied in determining the rights of the trustees, *cestuis que trust,* creditors of the trust or others that deal with the trust. (*Schumann-Heink* v. *Folsom, supra.*) If this new extension of the use of trusts requires regulation, that is a matter of legislative and not judicial concern. Some states have seen fit to regulate this form of business enterprise by statute. (See Massachusetts Gen. Laws 1921, chap. 182; Massachusetts Acts and Resolves 1926, chap. 290; Oklahoma Sess. Laws 1925, chap. 56; Oklahoma Sess. Laws 1927, chap. 17; Wisconsin Laws 1923, chap. 431.)

From the foregoing analysis it follows that in this state, if, in fact, a true trust has been created, the shareholders are not personally liable on the obligations incurred by the trustees or the managing agents appointed by the trustees.

We now turn to an application of the above principles to the trust agreement involved in this case. The ''Agreement and Declaration of Trust'' of Drascena Productions is set forth in full in one of the answers filed herein, and by stipulation was admitted into evidence. It would serve no useful purpose to summarize that agreement. It is sufficient to say that it contains the usual provisions found in the agreements which under the authorities cited *supra* have been held to create a true trust. It provides, among other things, that the five trustees shall have full authority and control; that title to the property shall be vested in them; that they shall fill all vacancies on the board and elect their successors, and thus differs from the Haegelin case, *supra;* that the subscribers are not to be

personally liable. The term of the existence of the organization is fixed upon lives in being, so that no question of the rule against perpetuities is involved. The only limitations placed upon the powers of the trustees are as follows:

1. The trustees are given full power to borrow money and to execute notes or other evidence of indebtedness, except "they shall have no power to mortgage the property of this trust without the written consent of the holders of two-thirds of the issued certificates of trust, except a purchase money mortgage."

2. As stated above, the trust is to remain in existence during the duration of certain specified lives in being, but it is provided that the trust may be terminated "by the unanimous vote of all of the trustees, or by a two-thirds vote of all the *cestuis que trust,* given at any meeting called for that purpose."

3. The trustees are given full power to amend, alter or add to the trust agreement, except that "any changes, additions or alterations in any way affecting the rights, privileges and interests of the *'cestui'* shall only be made by the consent of the owners and holders of two-thirds of all the outstanding shares of trust certificates."

No other restrictions upon the powers of the trustees than those enumerated are to be found in the trust agreement, nor can the subscribers, under that agreement, exercise any powers not mentioned above. It is to be noted that in the three matters enumerated above the subscribers are only granted one affirmative power—the power to terminate the trust without the consent of the trustees. The other two powers are purely negative; they must give their consent to any change in their legal status, and they must consent to any mortgage, except a purchase-money mortgage, executed by the trustees. No powers of suggestion or control other than those mentioned are conferred. It seems apparent that these rights and powers fall short of making the trustees mere agents of the certificate holders. It seems clear that these limitations on the powers of the trustees leave the trustees the masters, and do not confer upon the subscribers that degree of ultimate control that will make the organization a partnership rather than a trust. This is in accordance with the views adopted elsewhere. (*Williams* v. *Inhabitants of Milton, supra; Betts* v. *Hackathorn, supra;*

*Greco* v. *Hubbard,* 252 Mass. 37 [147 N. E. 272]; *Crocker* v. *Malley, supra.*)

It therefore follows that no direct personal liability attaches to the shareholders of Drascena Productions on the promissory note set forth in the first eight causes of action above enumerated simply by virtue of the fact that they are shareholders of that organization.

We turn now to a discussion of the various points of pleading involved. As set forth in the statement of facts, *supra,* before the plaintiff had rested his case the court granted a motion to compel him to elect upon which cause of action he desired to proceed. This was undoubtedly error. As already noted, the first eight causes of action are all based on the promissory note in one form or another. The ninth and tenth causes of action do not refer to the note, the former being on a book account as to all the defendants, and the tenth upon an account stated. Assuming that all these causes of action are based upon the same transaction and involve the same amount of money, a fact which seems to be conceded by all parties involved on this appeal, the plaintiff had the right to set them forth in various and if need be even inconsistent counts. (*Keller* v. *Hicks,* 22 Cal. 457 [83 Am. Dec. 78]; *Wilson* v. *Smith,* 61 Cal. 209; *Stockton Combined Harvester etc. Works* v. *Glen Falls Ins. Co.,* 121 Cal. 167 [53 Pac. 565]; *Froeming* v. *Stockton Elec. R. R. Co.,* 171 Cal. 401 [Ann. Cas. 1918B, 408, 153 Pac. 712]; *Tanforan* v. *Tanforan,* 173 Cal. 270 [159 Pac. 709]; *Turner* v. *Turner,* 173 Cal. 782 [161 Pac. 980].) The law is well settled that in such cases the plaintiff cannot be compelled to elect as to the cause of action upon which he desires to rely. (*Cowan* v. *Abbott,* 92 Cal. 100 [28 Pac. 213]; *Rucker* v. *Hall,* 105 Cal. 425 [38 Pac. 962]; *Estrella Vineyard Co.* v. *Butler,* 125 Cal. 232 [57 Pac. 980]; *Murphy* v. *Crowley,* 140 Cal. 141 [73 Pac. 820]; *Figlietti* v. *Frick,* 203 Cal. 246 [263 Pac. 534].) Assuming, for the purposes of this opinion, that the first eight causes of action can be treated as but one (since they are all upon the note in one form or another), the plaintiff clearly had the right to sue upon the note or upon the original indebtedness (i. e., book account or account stated), (*Holley* v. *Smalley,* 269 Fed. 694 [50 App. D. C. 178]; *Lake* v. *Fletcher,* 280 Fed. 1020 [52 App. D. C. 46]; *Schreyer* v.

424

*Turner Flouring Mills Co.*, 29 Or. 1 [43 Pac. 719]; *Savage* v. *Savage*, 36 Or. 268 [59 Pac. 461]; *Sullivan* v. *Rudisill*, 63 Iowa, 158 [18 N. W. 856]; *Stalnaker* v. *Tolbert*, 121 S. C. 437 [114 S. E. 412]; *First Nat. Bank* v. *Larsen*, 146 Wis. 653 [132 N. W. 610]), and this being so, under our practice, under the authorities, *supra*, it was proper for the plaintiff to join the causes of action in one complaint, and it was error for the trial court to compel him to elect.

Appellant also contends that the court erred in granting the motions for nonsuit. In reference to this assignment of error it will be necessary to consider each group of defendants separately. Turning our attention to the defendants represented by Schweitzer & Hutton, it appears that the answer interposed by this group failed, as above noted, to in any way mention the tenth cause of action. As to the seventh cause of action, the answer was as follows: "That the defendants have no information or belief upon which to base an answer to the allegations contained in the seventh cause of action, and on that ground deny each and every allegation thereof." ▆▆ Although this form of denial is sufficient under some circumstances (*Jensen* v. *Dorr*, 159 Cal. 742, 747 [116 Pac. 553]; *Mahoney et al.* v. *Atchison etc. Ry. Co. et al.*, 101 Cal. App. 652 [281 Pac. 1108]), it is not sufficient as to any matter presumably within the knowledge of the defendant, in which case his denial must be specific. (*Hensley* v. *Tartar*, 14 Cal. 508; *People* v. *Hagar*, 52 Cal. 171, 182; *Mahoney et al.* v. *Atchison etc. Ry. Co. et al.*, *supra*.) Certain of the allegations in the complaint were presumably within the knowledge of defendants, and as to these, therefore, the answer under the authorities *supra* must be held to have raised no issue. What these matters are will more particularly appear when we consider the answer of the defendants represented by Mr. Winterer.

As to these defendants (not including Apostol and Arnis who filed a separate answer) it appears that their answer does specifically deny the matters alleged in the various counts of the complaint. Most of these denials, however, are on information and belief, and it is the contention of appellant that as to certain of these, such form of denial was insufficient and raised no issue, and that therefore this group of defendants must be regarded as having admitted

many of the facts alleged in the complaint. We do not deem it necessary to separately consider each assignment of error made by appellant in this regard, but confine ourselves to some of the most obvious defects in the answer of these defendants. ▮ Paragraph nine of plaintiff's first cause of action, incorporated by reference in all other causes of action except the ninth and tenth, alleges that all the defendants, with the exception of Morante and Morante Comedy Company, executed the note upon which the first eight causes of action are based, and delivered the same to the Morante Comedy Company as evidence of the obligation of the defendants to plaintiff's assignor. This group of defendants denied the delivery of the note on information and belief, and even with this form of denial only denied that the note was delivered "as evidence of any obligation at all of the said defendants or any of them." This denial is insufficient for two reasons: first, it does not deny the fact of delivery, and, second, whether or not the defendants delivered the note was a matter presumptively within their knowledge, and therefore they were called upon to deny the same positively if they wished to raise an issue on this point. (*Mulcahy* v. *Buckley*, 100 Cal. 484 [35 Pac. 144]; *Zany* v. *Rawhide Gold Min. Co.*, 15 Cal. App. 373 [114 Pac. 1026]; *Jensen* v. *Dorr*, 159 Cal. 742 [116 Pac. 553].)

▮ In each cause of action plaintiff alleged that Bloom Laboratories had filed the certificate required by sections 2466 and 2468 of the Civil Code. This group of defendants denied this allegation on information and belief. This was clearly such a matter of public record that it could not be put in issue by a denial on information and belief. (*Santa Barbara Lumber Co.* v. *Ross*, 183 Cal. 657 [192 Pac. 436]; 21 Cal. Jur., p. 150.)

▮ Without detailing any further errors in the answer of these defendants, it appears from the foregoing that this answer, and likewise that of defendants represented by Schweitzer & Hutton, raises no issue as to certain material allegations, and the plaintiff was required to offer no proof thereon. The trial court was clearly in error in granting the nonsuit in favor of these defendants.

As to the other defendants, no motion for nonsuit was made in their behalf, and it was error to enter such a judg-

ment in favor of any one of them in the absence of such motion.

Inasmuch as this case must be reversed and a new trial had, it seems well to indicate that the order of nonsuit was also erroneous in reference to another group of defendants. Although Drascena Productions is not made a party to the action as a separate entity, it being plaintiff's theory that that organization was a copartnership (which theory, as we have heretofore seen, was incorrect), all of the trustees are made parties defendant, because they are all likewise shareholders. These defendants are all respondents here, and are Harlan, Cox, Conant, St. John and Watts. ▇▇▇ The law is clear that in the absence of an express or implied agreement with the creditor to the contrary, the trustees are personally liable on all contracts with third persons. In the case of *Taylor* v. *Davis,* 110 U. S. 330 [28 L. Ed. 163, 4 Sup. Ct. Rep. 147, 150, see, also, Rose's U. S. Notes], the rule is thus stated: "A trustee is not an agent. An agent represents and acts for his principal. . . . When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot.promise; the contract is therefore the personal undertaking of the trustee. . . . He is personally bound by the contracts he makes as trustee, even when designating himself as such. . . . If a trustee contracting for the benefit of the trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the.trust estate." (See, also, *Hewitt* v. *Phelps,* 105 U. S. 393 [26 L. Ed. 1072]; *Betts* v. *Hackathorn,* 159 Ark. 621 [31. A. L. R. 847, 252 S. W. 602]; *Frost* v. *Thompson, supra;* 9. Fletcher on Corporations, sec. 6095; 8 Thompson on Corporations, 3d ed., sec. 6746.) This broad personal liability of the trustees may be limited by provisions to that effect in the declaration of trust, if known and agreed to by all the parties affected. (*Frost* v. *Thompson, supra; Wells-Stone Mer. Co.* v. *Grover,* 7 N. D. 460 [41 L. R. A. 252, 75 N. W. 911]; *Taylor* v. *Davis, supra.*) ▇▇▇ In the trust agreement under consideration the following provision is found relating to the liability of the trustees: " . . . all contracts . . . shall

be the obligation of the trustees, and in every written order, contract or obligation made by the trustees, it shall be their duty to stipulate therein that neither the trustees nor the *cestuis que trust* shall be held to any personal liability under or by reason of such order, contract or liability, and that all persons having dealings with the trustees shall look only to the property of this trust for payment." In the first place, even if plaintiff knew of this clause in the trust agreement, it does not appear therefrom that in any contract where the trustees have not stipulated against personal liability, mere knowledge of the above clause would release the trustees from the ordinary and usual personal liability. As we interpret that clause, the creators of the trust have conferred on the trustees the power of releasing themselves from personal liability, but in order to enjoy that privilege they must stipulate to that effect in every contract with a third person. That privilege is a limitation of the general rule of liability, and is a limitation on the rights of the creditors of the trust. That being so, the limitation will not be enforced in the absence of a clear understanding and knowledge on the part of the creditors to the effect that no such liability is to exist. In the second place, there is nothing in the record of this case to show that plaintiff's assignor had knowedge of that clause at the time the promissory note was executed. ▮▮▮ It was, therefore, error to grant a nonsuit in favor of the five trustees, for, on the record before us, they are clearly liable for the amount set forth in the note.

For the purposes of clarity it might be well to enumerate briefly the points discussed in this opinion.

1. In all causes of action in which issue was properly joined a nonsuit would have been proper as to all subscribers who were not trustees, for the reason that the organization involved is an example of a Massachusetts or business trust. The certificate holders in such an organization are not personally liable on the contracts of the trustees. Therefore, as to these causes of action it was not prejudicial error to compel an election, because, regardless of the election, this plaintiff could not possibly prove any liability on the part of the shareholders other than the trustees.

2. It was clearly error for the trial court to compel the plaintiff to elect between those causes of action based on the note and those based on the alleged original obligation of which the note is the evidence.

3. As to the defendants represented by Schweitzer & Hutton, it was clearly error to grant a nonsuit in their favor for the reason that said defendants either utterly failed to answer certain allegations of the complaint, or so defectively did so that no issue was raised thereby.

4. As to those defendants represented by Winterer, other than Apostol and Arnis, the answer filed in their behalf failed to properly deny certain material allegations of the complaint, and therefore must be deemed to have admitted the same.

5. The other defendants did not move for a nonsuit, and therefore it was error to enter such a judgment in their favor.

6. In any event, from the state of the record, it appears that the five trustees of the Drascena Productions are personally liable on the note, and it was therefore error to enter a nonsuit in their favor.

In order to secure complete justice in the premises it seems well to indicate to the trial court that before the new trial in this case, plaintiff and defendants, if they be so advised, should be permitted to file amended pleadings in accordance with the foregoing opinion, and thus properly present to the trial court the issues involved.

The judgment appealed from is reversed and a new trial ordered.

Rehearing denied.