**BANK OF AMERICA NAT. TRUST & SAVINGS ASS'N v. SCULLY.**
**No. 10800.**

District Court, D. Colorado.
Jan. 25, 1937.

Clarence A. Brandenburg and Stanley C. Brandenburg, both of Denver, Colo., for plaintiff.

Hindry, Friedman & Brewster, of Denver, Colo., for defendant.

SYMES, District Judge.

This is an action to recover $15,127.59 plus interest, balance due on a promissory note of $37,822.09, dated and payable to the plaintiff in Los Angeles, Cal., April 15, 1931, due October 13, 1931, signed "Bartlett Syndicate by Frank R. Strong, George L. Reynolds, W. R. Wheat, George W. Dickinson, Managing Committee Bartlett Syndicate." The defendant Scully did not sign the note. On October 27, 1927, however, he became by written assignment the owner of a $\frac{150}{8000}$ fractional portion of the entire beneficial interest in the so-called Bartlett Syndicate, created July 28, 1927, by a declaration of trust executed by the Merchants National Trust & Savings Bank of Los Angeles as trustee. The question raised by the demurrer is the liability of the defendant for the debts of this so-called association incurred by the managing committee. This instrument is lengthy and involved. Its object was to promote, develop and sell a certain tract of land near Los Angeles, and amortize the mortgage thereon. The plaintiff bank, by mesne assignments and mergers, is the successor trustee. The note was executed by a majority of the seven persons named in the trust instrument as managing committee for the beneficiaries. Their powers will be presently noted.

The trust declaration discloses that one A. G. Bartlett, Inc.—a California corporation called "seller"—sold a certain tract of land to one Margaret Douglass as "buyer," who in turn executed a note and mortgage on the property to the said A. G. Bartlett, Inc. The said Margaret Douglass as buyer thereupon conveyed the real estate to the trustee. The seller, A. G. Bartlett, Inc., assigned the note and mortgage to the same party, that is, the trustee; without merger, however, of the legal title and the mortgage lien.

The trust provides that the trustee "acting for the Buyer," who is named the beneficiary, shall subdivide the property and execute all contracts for the sale and deeds of lots; the buyer to pay all expenses, fix prices, select agents, pay taxes, assessments and for all work and improvements, with power to impose on the trustee

such restrictions, conditions, reservations, etc., as she may determine. And paragraph fifth, that "The Buyer shall be privileged to retain possession of all of said real property and have the management and control thereof as long as there is no default hereunder." And paragraph sixth, the buyer "hereby obligates herself to pay all the expenses incurred in connection with the execution, acceptance, operation or termination of this trust payable by the Buyer as hereinafter provided."

Paragraph ninth is unusual. It provides that, in the event the buyer's beneficial interests shall become vested by assignment or otherwise in the seven individuals named in the instrument, either in whole or in part, then in that event the said named parties shall constitute a committee "in full charge of all matters connected with the buyer," and that thereafter the written instructions of any four of said committee of seven shall "absolutely be binding" on the trustee. This contingency it is alleged happened immediately upon the creation of the trust; that is, the beneficiary, Margaret Douglass, sold her entire beneficial interests to various parties, including a fractional interest to the defendant Scully and to each of the members of said committee. The beneficiaries are thereafter referred to as Bartlett Syndicate.

Language as explicit as it is possible to employ provides that the power given to the committee is absolute, unrestricted and irrevocable for the full term of the trust; that all holders of beneficial interests therein shall be "in all respects subject to terms and provisions of this paragraph Ninth of this trust indenture," and "Shall in all respects be bound hereby." And not only says that no holder of any part of the buyer's beneficial interest or Margaret Douglass, as the case might be, shall have any right under any circumstances to question or disturb any decision or instruction given by any four of said committee to the trustee, but specifically enjoins the trustee to disregard each and every protest of any such holder; nor shall the beneficiaries have any right to recall or dismiss any committee member, or in any way lessen in any degree "the rights and powers hereby irrevocably given, granted and transferred to said committee." The only right the holders of beneficial interests have, beyond the right to profits and their proportionate share of the trust property, is to fill vacancies in this managing committee

caused by death or transfer by a member of his beneficial interest.

Any four of said committee, in addition to other powers, shall have the right "to incur any and all indebtedness in and about said trust and trust property and the buyer's interest thereunder," etc. Finally the trustee shall act upon the instructions of any four of the committee, and when so acting binds the beneficiaries.

Admittedly the note represents moneys loaned by the plaintiff as a bank to the committee from time to time and used in the business of a trust, of which it was trustee, so it is charged with knowledge of the terms thereof.

Trusts, their invention and development, says a writer in 33 Harvard Law Review, March, 1920, p. 688, is the largest and most important branch of equity; that its general principles are fairly well settled, and the current decisions relate chiefly to the construction of written instruments. For the purposes of discussion they are divided into classes; the one before us falls under the heading "Trust Estates as Business Companies." And, according to one author (Sears' Trust Estates, Second Edition), is comparable to the corporate form of organization. The trustees take the place of directors, the beneficiaries occupy the relative position of stockholders, and the trust agreement supplants the certificate of incorporation. To the same effect see Hecht v. Malley, 265 U.S. 144, at page 157, 44 S.Ct. 462, 466, 68 L.Ed. 949.

The early cases on trusts dealt of course with testamentary dispositions, devises for the benefit of orphans, infants, minors, etc., and the liability of administrators, executors, trustees, etc.; the question generally involved being the personal liability of the latter and their right to recoup from the corpus of the estate. It was never thought nor held that the beneficiaries were personally liable for the debts, and not until the courts had to do with this modern development of the entity, used by a group of individuals to carry on a business, did the question of their personal liability arise.

The legal questions raised by these so-called business associations were first considered by the courts of Massachusetts and their decisions have been followed in most jurisdictions. An early and much cited case is Williams v. Inhabitants of Milton (1913) 215 Mass. 1, 102 N.E. 355, in which the broad rule was laid down that these

trust instruments create either a pure trust or a partnership, according to the way in which the trustees are to conduct its affairs. The case decides (102 N.E. at page 357) that, if the certificate holders (the beneficiaries) are the principals whose instructions are to be obeyed by their agent who, for their convenience, holds the legal title to the property, then the property is theirs and they are the masters and the trustee is merely their agent; but, where there is no association between the certificate holders and the property is the property of the trustees, who manage the same, the certificate holders are not partners and it is what is known as a pure or Massachusetts trust. See, also, Mayo v. Moritz, 151 Mass. 481, 24 N.E. 1083; Frost v. Thompson, 219 Mass. 360, 106 N.E. 1009, 1010; Horgan v. Morgan, 233 Mass. 381, 124 N.E. 32; Sleeper v. Park, 232 Mass. 292, 122 N.E. 315; Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L. Ed. 573, 2 A.L.R. 1601.

Adverting to the particular trust there in question, the court held it to be a trust and not a partnership, because the beneficiaries or cestuis were in no way associated together, no provision made for meetings to be held by them, and their sole right was to have the property administered in their interest, receive the income and their share of the corpus when the trust comes to an end, so "It is the trustees and not the certificate holders who are the masters of the trust property."

The Supreme Court of the United States recognizes the distinction. In Hecht v. Malley, 265 U.S. 144, at page 147, 44 S.Ct. 462, 463, 68 L.Ed. 949, it says: "Under the Massachusetts decisions these trust instruments are held to create either pure trusts or partnerships, according to the way in which the trustees are to conduct the affairs committed to their charge. If they are the principals and are free from the control of the certificate holders in the management of the property, a trust is created; but if the certificate holders are associated together in the control of the property as principals and the trustees are merely their managing agents, a partnership relation between the certificate holders is created. Williams v. Milton, 215 Mass. 1, 5, 102 N.E. 355; Frost v. Thompson, 219 Mass. 360, 365, 106 N.E. 1009; Dana v. Treasurer, 227 Mass. 562, 565, 116 N.E. 941; Priestley v. Treasurer, 230 Mass. 452, 455, 120 N.E. 100."

Sears, in his work Trust Estates, Second Edition, discusses the non-liability of beneficiaries, reviews the authorities, recognizes the Massachusetts rule, and concludes (section 88, p. 136) that a beneficiary or shareholder in an unincorporated business association may acquire the same interest in the enterprise as a stockholder in the assets of a corporation "and the same personal immunity from its acts and contracts."

"Indeed, it may be well thought that the latter is so evident that rarely has it been attempted to contend that any cestui que trust is a mere principal of a trustee. The mere statement of such a proposition involves a contradiction in terms, or at least is opposed to all theory upon which equitable jurisdiction has attached in favor of beneficiaries in property to which they have no legal title."

Bogert, On the Law of Trusts and Trustees, vol. 2, par. 291, p. 972, states: "The trust indentures differ very greatly in the extent to which they vest powers in the beneficiaries to elect and remove trustees, to amend the trust instrument, or to control the trustees in the conduct of the business. These differences are of great importance in determining certain of the incidents of this type of business organization, especially on the question of the personal liability of the beneficiaries for the debts of the enterprise, and occasionally it is stated that the term 'business trust' is applicable only where the trustees are free from any substantial control by the shareholders."

And paragraph 294: "In order to have squarely presented the question of the possibility of securing exemption from personal liability for the shareholders, the trust must be one in which the shareholders have reserved no powers of control over the business or in which the powers reserved are not extensive. It is uniformly held that, if the cestuis may dictate on questions of the management of the trust, they are liable for the debts."

Paragraph 296: "They see nothing contrary to public policy or legislative intention in permitting entrepreneurs to achieve freedom from personal liability without complying with either the corporation or the limited partnership statutes."

That "a trustee is not an agent" was early decided by the Supreme Court in Taylor v. Davis, 110 U.S. 330, at page 335, 4 S.Ct. 147, 150, 28 L.Ed. 163: "A trustee

may be defined generally as a person in whom some estate interest or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts, and is bound, but the agent is not. When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee."

The opinion cites (110 U.S. 330, at page 336, 4 S.Ct. 147, 151, 28 L.Ed. 163) the statement of Mr. Justice Story in Duvall v. Craig, 2 Wheat, 45, 4 L.Ed. 180 and in his work on promissory notes, that trustees, guardians, etc., have no authority "to bind ex directo the person for whom, or for whose benefit, or for whose estate, they act." This case and rule are cited in Lackett v. Rumbaugh (C.C.) 45 F. 23, 29; American Trust Co. v. Canevin (C.C.A.) 184 F. 657, at page 661; Laurent v. Anderson (C.C.A.) 70 F.(2d) 819, at page 822; Lane v. Equitable Trust Co. (C.C.A.) 262 F. 918, at page 928; Allegheny Tank Car Co. v. Culbertson (D.C.) 288 F. 406, at page 410.

A good discussion of many of the questions involved is found in Darling v. Buddy, 318 Mo. 784, 1 S.W.(2d) 163, 58 A.L.R. 493, in which the state Supreme Court held that trustees named are principals and not agents and that it was a business trust agreement; that they, and not the cestui que trust, are principally responsible for indebtedness incurred where, as in that case, the entire control and management was vested in them. The court cites and approves Betts v. Hackathorn, 159 Ark. 621, 252 S.W. 602, 604, 31 A.L.R. 847, which exempted shareholders of a trust from individual liability, where they are shorn of all control and management of the business, and the instrument considered as a whole indicates that the shareholders were not associated with each other, or with the trustees for the purpose of conducting the business in person or through agents. That the government recognizes the Massachusetts rule in tax cases, see Vondermuhll v. Helvering, 64 App.D.C. 137, 75 F.(2d) 656.

This association is a resident of, and carries on business in, California. Likewise the cause of action arose there. The highest court of that state (Goldwater v. Oltman, 210 Cal. 408, 292 P. 624, 71 A.L.R. 871), has held there is no reason why such organizations with their limited liability should not be recognized in California, discusses the authorities, and specifically adopts the Massachusetts rule. On the liability of beneficiaries that court has this to say (292 P. 624, at page 628): "It is the retention or non-retention of ultimate control by the shareholders which has been treated as a determining factor in the question as to whether the particular organization is a trust or a partnership." And "by the weight of authority, where the trustees have complete control of the business, the creators of the trust are treated as are the cestuis que trust of an ordinary equitable trust, and are exempt from direct personal liability to the creditors of the business; but if the trustees are subject to the control of the creators of the trust, the latter or their successors are liable as partners." And: "The old idea was that any sharing in the profits of an unincorporated organization necessarily implied a partnership, but that concept was specifically repudiated as early as 1860 in the case of Cox v. Hickman, 8 H.L.Cases 267, 11 Eng.Reprint 431. Most American jurisdictions have followed the English case and hold that mere profit sharing of itself does not necessarily create a partnership, and that therefore, for the reasons already discussed, if a true trust has been created, the certificate holders are not liable personally." And (292 P. 624, at page 629): "From the foregoing analysis it follows that in this state, if, in fact, a true trust has been created, the shareholders are not personally liable on the obligations incurred by the trustees or the managing agents appointed by the trustees."

The rule deduced from the above authorities succinctly stated is: The trust indenture creates a pure trust with exemption from personal liability for the shareholders, when no powers of control are reserved to the latter other than the right to share in the profits and the corpus on liquidation and, as in the case at bar, the right to fill vacancies in the managing committee, etc. Otherwise the trust entity is a partnership with the liabilities incident thereof.

It is not necessary to detail again the provisions of this instrument. It suffices to say it would be hard to draw an indenture—and the cases disclose none—that vests in the managers power, more absolute and irrevocable, than does the instrument before us. This committee is not only independent of the defendant and other shareholders, but is specifically enjoined to

"disregard each and every protest, demand, instruction or direction of any holder of any part of the beneficial interest."

Clearly the shareholders had not that ultimate control which the authorities say is a prerequisite of their personal liability. But, argues the plaintiff, this is not a Massachusetts trust, because the trustee, holder of the legal title, is not vested with the control nor did it incur the obligation for which it is sought to hold the defendant. Further he says the ruling in the Goldwater Case, supra, turned on the fact that the certificate holders neither possessed nor exercised control over the trustees. True, the plaintiff here—a mere naked trustee—was originally under the direction of the beneficiaries; but with the happening of the contingency provided for in paragraph ninth—which came to pass before the defendant acquired his interest—full control passed to the managing committee (Bartlett Syndicate), and the beneficiaries were effectively deprived of any voice in the management.

Every trust agreement differs in its terms, but always the test is, the actual relations between the trustee, the management, and the beneficiaries (Darling v. Buddy, 318 Mo. 784, 1 S.W.(2d) 163, 58 A.L.R. 493, supra), for equity looks to the substance and not to the form. This committee was created by the trust indenture and whether designated trustee or not is of little consequence. It is important, however, that it is a distinct entity, separate and apart from the shareholders, not of their choosing.

It is true that in Goldwater v. Oltman, supra, the indenture provided that the subscribers were not to be personally liable. A careful reading of the opinion, however, discloses that the court attached no importance to that provision and it is not one of the grounds upon which nonliability was grounded. In Case v. McConnell & Forrester, 5 Cal.App.(2d) 688, 44 P.(2d) 414, plaintiffs were employed by the executive committee of a real estate business trust to sell lots, and recovered judgment for commissions earned. That this committee were the agents of the beneficiaries was not disputed. For this reason the judgment was affirmed by the appellate court in spite of a provision in the trust agreement that the beneficiaries should not be personally obligated, it not being shown that limitation of liability had been disclosed to the plaintiffs. The decision is by an intermediate appellate court and does not purport to, nor could it, modify Goldwater v. Oltman, supra.

The demurrer is sustained.