ESTHER MARIANI BARTOLI DE CHRISTIAN ET AL., Plaintiffs and Appellants, *v.* MARIANA CHRISTY GUENARD ET AL., Defendants and Appellees.

No. 10537. Argued August 26, 1952.—Decided September 18, 1952.

730

*A. Figueroa Rivera* for appellants. *A. Ramírez Silva* for appellees.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The plaintiffs-appellants Esther Mariani Bartoli de Christian and her husband José C. Christian sued the appellees Mariana Christy Guenard and her husband Francisco Llavat for damages in the former District Court of Puerto Rico, Mayagüez Section, alleging in the complaint, in brief, that the plaintiffs are the owners of a lot that faces Los Millonarios Street in Mayagüez and adjoins another lot separately owned by the defendant Mariana Christy Guenard de Llavat; that the defendants constitute a conjugal partnership that operates, among others, a business for the renting of houses and lots, which include the lot (and the house built thereon) adjoining the plaintiffs; that during

the week between August 12 and 18, 1946, in order to promote their rental business, the defendants made, through their workers and employees whom they paid for that purpose, a relatively deep excavation along the line between the two lots, and in making said excavation they destroyed, through their fault and negligence, a wall that supported part of the house occupied by the plaintiffs, which house, upon being deprived of that support, partially sank on the 16th day of the aforesaid month of August, and that as a result of the sinking, the plaintiff Esther Mariani de Christian fell down and suffered the injuries described in the complaint.

The defendants filed an answer, hereinafter discussed, and the case was subsequently heard on its merits. Upon the conclusion of plaintiffs' evidence, the defendants filed a motion for nonsuit,[1] which was granted by the court *a quo*, and judgment was entered dismissing the complaint, on the basis of the order granting the motion for nonsuit. The plaintiffs appealed from that judgment to this Court and assigned the following errors:

1. The District Court erred in deciding that the connection between the enterprise operated by the defendants and the cause of the accident was not proved.

2. Said court also erred in deciding that the relationship of agency between the defendants and the person who caused the accident was not shown, erroneously holding that it was rather shown that the acts alleged by the plaintiffs were occasioned by an "independent contractor" for whose actions the defendants are not liable.

3. The District Court erred in granting a nonsuit in favor of the defendants and entering judgment dismissing the complaint.

---

[1] Under Rule 41 (*b*) of our Rules of Civil Procedure a motion for nonsuit is identified as a motion to dismiss on the ground that upon the facts and the law the plaintiff has shown no right to relief.

■ The errors assigned were actually committed and the judgment appealed from must be reversed. As to the first assignment, in its order granting the motion for nonsuit, the former District Court of Mayagüez expressed its view to the effect that the plaintiffs had not proved that the defendants were engaged in an enterprise as required by § 1803 of the Civil Code. It is true that the plaintiffs did not present any evidence to the effect that the defendants were the owners or directors of an establishment or enterprise. However, in the third and fifth paragraphs of the complaint it was alleged as follows:

"3. The defendants constitute a conjugal partnership that operates, among others, under the management of the defendant Francisco Llavat, a business for the renting of houses and lots, which include the lot (and the house built thereon) that adjoins the defendants (*sic*), as stated in the preceding averment . . .

". . . . . . . .

"5. During the week between August 12 and 18, 1946, in order to promote their business for the renting of houses and lots, the defendants made, through their workers and employees whom they paid for that purpose along the line between the two lots above mentioned, a relatively deep excavation, etc."

In their answer, after setting up a first defense to the effect that the amended complaint had prescribed, the defendants alleged the following:

## "QUESTIONS OF FACT
### SECOND DEFENSE

"FIRST: The defendants accept the first, second, third, and fourth averments of the complaint.

"SECOND: In answer to the fifth averment of the complaint, the defendants accept that certain work was performed along the boundary between the properties of the plaintiffs and the defendants, alleging that said work was performed with all due care and by experienced personnel; they further deny that

through defendants' fault and negligence, or otherwise, they destroyed a wall that supported part of plaintiffs' house and that, as a result thereof, the said house of the plaintiffs partially sank on the 16th day of the aforesaid month of August, alleging to the contrary, that the work performed at no time contributed in any form or manner to the partial sinking of plaintiffs' house nor to any other sinking whatsoever."

In their special defenses the defendants alleged that the complaint in this case had been filed because of the plaintiffs' personal animosity against the defendants on account of a previous suit; that if there was any inclination of plaintiffs' house, it was due to the fault and negligence of the plaintiffs themselves in having their property in a state of abandonment and in bad condition; that if the alleged inclination actually resulted it was merely casual, accidental, and unexpected and not due to the defendants' negligence, either by themselves or through third persons, and "that to do the said work in their property, the defendants engaged skilled laborers and able persons taking into account their experience, knowledge, and ability."

It is evident that the defendants expressly accepted and admitted the facts alleged in the third paragraph of the complaint in which it is specifically averred that the defendants constitute a conjugal partnership that operates a business for the renting of houses and lots. In denying the fifth paragraph of the complaint, the defendants denied several facts alleged therein but failed to deny the averment contained in that paragraph to the effect that the excavation was made in the course of the defendants' business for the renting of houses and lots. Likewise they did not set up any special defense to the effect that they were not engaged in any business for the renting of houses and lots. It having been admitted in the answer, by express acceptance as to the third paragraph and by failure to deny as to the fifth paragraph, that the defendants operated a business for the renting of houses and lots and that the accident happened

in the course of said business, those facts were established by virtue of the defendants' admissions in their answer and the plaintiffs were not obliged to present evidence in connection therewith.

Rules 8(b) and (d) of our Rules of Civil Procedure provide:

"Rule 8(b).—A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. . . ."

"Rule 8(d).—Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. . . ."

Defendant's admissions in his answer relieve plaintiff from the burden of proving the facts thus admitted. *Abella* v. *Piñero, Governor*, 66 P.R.R. 651, 653; *Cayere* v. *Buxó*, 62 P.R.R. 880. The plaintiff is not required to submit any evidence as to facts not denied or admitted in the answer, and such facts must be taken as true. 71 C.J.S. 333; *Torres* v. *Sociedad Anónima Tranvía*, 18 P.R.R. 246; *Santini Fertilizer Co.* v. *Burgos et al.*, 34 P.R.R. 830; *García* v. *Torres et al.*, 20 P.R.R. 157. The legal test is the same under the Rules of Civil Procedure. 2 Moore's Federal Practice, p. 1700, § 8.29, 2d ed.

■■ A motion for nonsuit can not be granted for the plaintiff's failure to offer proof of allegations of the complaint which are admitted by the defendant in his answer, either by an express acceptance or by the failure to deny them. *Goldwater* v. *Oltman*, 210 Cal. 408; 292 Pac. 624; 71 A.L.R. 871; *Jackson City Bank & Trust Co.* v. *Sternburg*, 274 N. W. 806, 112 A.L.R. 1195; 53 Am. Jur. 262, § 323. In a motion for nonsuit the answer may be considered to show the issues. *Villarán* v. *Loíza Sugar Co.*, 43 P.R.R. 580, 587.

This Court has established that the cases must be decided on their merits instead of on legalistic niceties of pleading

and procedure and that no party has a vested right in the grammatical and procedural errors of his adversary. *Serra* v. *Transportation Authority*, 68 P.R.R. 581. On the other hand, such liberality must not be stretched to the point of penalizing a claimant for his failure to present evidence as to facts already admitted by his adversary in the pleadings.

■■ It having been established by virtue of the defendants' admissions that the defendants were engaged in a business for the renting of houses and lots and that the alleged tortious act in question occurred as an incident of said business, it follows that the defendants were engaged in an enterprise as contemplated by § 1803 of the Civil Code. A business for the renting of lots and houses must be considered an enterprise. See by analogy, *Morales* v. *Caraballo*, 27 P.R.R. 544; *Aponte* v. *Palacios*, 55 P.R.R. 674; *Acha* v. *Nevares*, 59 P.R.R. 235, 240–1; *Vázquez* v. *González*, 61 P.R.R. 268; *Carrasquillo* v. *Am. Missionary Association*, 61 P.R.R. 837; *Torres* v. *Perea*, 66 P.R.R. 164; and *Vélez* v. *Llavina*, 18 P.R.R. 634, 637. It was concluded in all these cases that an enterprise was involved, on the ground that the entity or person either habitually or for profit was engaged in a business.

■ The essential basis of the order of the lower court granting the motion for nonsuit was its conclusion to the effect that the plaintiffs' evidence itself disclosed and established the fact that the immediate wrongdoer, namely, the person who allegedly made the excavation that occasioned the partial sinking of plaintiffs' house, was not an agent or employee of the defendants, but rather, an agent or employee of an independent contractor called Andrés Barrios. In broad terms, if the workman who allegedly causes the injury is an agent or employee of an independent contractor and not of the alleged employer, the latter would not be liable. (*Natal* v. *Bartolomey et al.*, 14 P.R.R. 474; *Colomé* v. *Guánica Centrale*, 16 P.R.R. 442; 27 Am. Jur. 504.) Let us examine the question.

In the first place, the defendants admitted and accepted in their answer that the workman or workmen who allegedly caused the injury on account of the excavation described in the complaint, were agents or employees of the defendants. In the fifth paragraph of the complaint it is alleged, as we have seen, that "in order to promote their business for the renting of houses and lots, the defendants made, through their workers and employees whom they paid. for that purpose, along the line between the two lots above. mentioned, a relatively deep excavation, in making which, through their own fault and negligence, they needlessly pulled down a wall which supported part of the plaintiffs' house, wherefore, lacking such support, the said house partially sank on the 16th day of the aforesaid month of August."

In their answer, and repeating now the foregoing, the defendants state that "in answer to the fifth averment of the complaint, the defendants accept that certain work was performed along the boundary between the properties of the plaintiffs and the defendants, alleging that said work was performed with all due care and by experienced personnel; they further deny that through defendants' fault and negligence, or otherwise, they destroyed a wall that supported part of plaintiffs' house and that, as a result thereof, the said house of the plaintiffs partially sank on the 16th day of the aforesaid month of August, alleging to the contrary that the work performed at no time contributed in any form or manner to the partial sinking of plaintiffs' house nor to any other sinking whatsoever."

Of course, the defendants did not deny the averment of the complaint to the effect that the alleged excavation was made through workers and employees of the defendants paid by them. On the contrary, they alleged that said workmen had been careful and were experienced. As noted, the failure to deny a fact of a complaint implies the truth of such

fact and relieves the plaintiff from the burden of proving it.

We meet the same situation upon examining the allegations of the parties as to the ninth paragraph of the complaint. In said ninth paragraph the plaintiffs alleged that: "Both the partial sinking of the plaintiffs' house, above referred to, and the direct consequences thereof, as set forth in the preceding paragraph, were due to the fault and negligence of the persons who, as paid employees and agents of the defendants and in the course of their employment, had been asked by the latter to make the aforesaid excavation, in the making of which, needlessly and through their own fault and negligence, they left unsupported that part of the plaintiffs' house which, therefore, sank as above stated." The sixth paragraph of the answer reads: "In answer to the ninth averment of the complaint the defendants deny that the alleged partial sinking of the plaintiffs' house occurred by reason of the negligence and fault of the defendants or of third persons, as well as that in the performance of the work previously referred to, the part of the plaintiffs' house which allegedly sank was left, needlessly, and through fault and negligence, or otherwise, without due support, alleging to the contrary that the work performed could never affect the plaintiffs' house nor, let alone, make it sink partially or cause any injury thereto."

The foregoing clearly indicates that the defendants did not deny and, therefore, admitted the allegation contained in the ninth paragraph of the complaint to the effect that the persons in charge of making the excavation and who actually made it were paid employees and agents of the defendants and in the course of their employment. The defendants' admission to the effect that the workers who allegedly made the excavation were defendants' agents and employees grows stronger due to the fact that in the special defense (c) of the answer, the defendants alleged: "that to do the said work in their property, the defendants engaged skilled labor-

ers and able persons taking into account their experience, knowledge, and ability."

The defendants affirmatively state that the workmen who accomplished the work had been engaged by the defendants themselves. We have set forth the legal consequences of such admissions in the answer. In the California case of *Hill* v. *Progress Co.*, 180 P. 2d. 956, a judgment of nonsuit granted upon conclusion of plaintiff's case was reversed, and it was held that if the defendants had not properly denied in their answer the averments of the complaint to the effect that certain persons were agents and employees of some of the defendants, then that allegation of agents or employees had to be taken as true.

Apparently the plaintiffs considered that they were not obliged to present evidence as to whether the workman who allegedly caused the injury, was an employee or an agent of the defendants. While Virgilio Quiñones, the workman who said that he had made the excavation, testified as a witness for the plaintiffs, the following incident took place:

"Q. Did you perform any kind of work on or about August 1946?

"A. Yes, sir.

"Q. Under whose orders? . . . I am sorry. Do not answer. It has been accepted by failure to deny. Which was the work you performed?

"A. I was digging a ditch along a boundary line that ended there. I was told to do that work."

■■ Conscious of the fact that the truth of the averments must prevail over the formality of the allegations, we recognize that, the admissions in an answer notwithstanding, if the plaintiff himself presents evidence showing that the admitted facts are not true and such evidence clearly defeats plaintiff's cause of action, a motion for nonsuit must be granted. However, if there is any doubt as to the sufficiency or insufficiency of plaintiff's evidence, then the trier must consider the admissions in the answer in connection

with a motion for nonsuit inasmuch as the plaintiff is not obliged to present evidence as to facts already admitted by the other party. Let us examine plaintiffs' evidence in order to determine whether it shows that the workman or workmen who made the excavations were agents or employees of the defendants or were rather agents or employees of an independent contractor.

Virgilio Quiñones, a witness, testified that in August 1946, he dug a ditch along the boundary line between the properties of both parties; he was told to do that work and he worked for four or five days; he dug a ditch 24 inches wide and about 12 inches deep; in the course of his work, he reached a wall, the nearest wall that was sloped where the ditch was to be dug; there was no other workman, but there was a master builder, Andrés Barrios, who gave him orders and was in charge; Andrés Barrios was a master builder, not an engineer, and being the witness' supervisor, he ordered Quiñones to do the work, although Barrios was not on the premises; the son of the defendant Francisco Llavat went twice to the premises, remained there for about fifteen minutes and then left. The witness said later that the master builder, Mr. Barrios, went to the premises for the first time to give him instructions, and that he went there once again and stayed for about half an hour; no other person went there; the witness had to chop two walls to make the ditch; the second wall was underground, "it was close to the boundary line . . . and close to the dining room of the house of Pepe Christian [the plaintiff]"; "the foundation" that supported the dining room of plaintiffs' house stood above the wall that the witness chopped; the witness did what Andrés Barrios, the master builder, ordered him to do; Andrés Barrios told him to chop the wall.

The other witnesses, including the plaintiffs themselves, testified as to the manner or way in which the accident occurred, and as to the injuries sustained by the plaintiff.

Virgilio Quiñones was the only one to testify in regard to his connection with Andrés Barrios, the master builder. At the close of plaintiffs' evidence the defendants filed a motion for nonsuit that was granted by the lower court, especially on the ground that Virgilio Quiñones' testimony disclosed that he had done the work under the orders and instructions of Andrés Barrios, who was a master builder and, therefore, an independent contractor, and that, consequently, plaintiffs' evidence showed that Virgilio Quiñones was not an agent or employee of the defendants, who were not liable.

 First of all we shall settle the rules that determine and control the granting of a motion for nonsuit. A motion for nonsuit admits all the evidence introduced by the plaintiff in the light most favorable to the latter and must be denied if there is a mere scintilla of evidence in support of a cause of action and when said evidence makes a prima facie case, such a motion being analogous to a demurrer to the evidence introduced by the plaintiff in support of the averments of his complaint. *José Malgor & Co.* v. *B. Silva, Sucrs.*, 70 P.R.R. 767; *Pagán* v. *Santiago*, 69 P.R.R. 136, 138; *Cámara* v. *Rodríguez*, 69 P.R.R. 113; *Torres* v. *Marcano*, 68 P.R.R. 813. Every inference arising from the evidence must be made and construed in favor of the plaintiff and a motion for nonsuit must be denied when the inferences arising from the evidence are in dispute or open to debate. 53 Am. Jur., 255, 257, 258, 263; *McCormick* v. *Great Western Power Co.*, 214 Cal. 658; *Slocum* v. *New York Life Ins. Co.*, 228 U. S. 364. The case of *Suárez* v. *Saavedra*, 52 P.R.R. 662 holds that although in passing upon a motion for nonsuit a judge is not precluded from drawing reasonable and proper inferences from the evidence, however, in drawing such inferences he should bear in mind that such motions should be considered with great caution and only granted in the clearest cases. *Villanueva* v. *Suárez et al.*, 41 P.R.R. 39, holds that for the purpose of a motion for nonsuit, the

truth of the evidence tending to support the plaintiff's case must be assumed and the evidence itself must be regarded in the light most favorable to him. *González* v. *Plazuela Sugar Co.*, 42 P.R.R. 676, holds that a court exercises its discretion properly in overruling a motion for nonsuit based on the insufficiency of plaintiff's evidence where such evidence is not so deficient as to afford a sufficient justification for the judge to subject said plaintiff to a nonsuit and no prejudice is caused to the authors of the motion by reason of such ruling. On the other hand, if plaintiff's evidence establishes facts constituting a complete defense, the motion must be granted. 53 Am. Jur. 263.

The lower court based its judgment of nonsuit on Virgilio Quiñones' testimony to the effect that Andrés Barrios had been the person who ordered him to do the work and that Andrés Barrios was a master builder. The lower court considered that this sufficiently proved that Andrés Barrios was an independent contractor—but Andrés Barrios could in his turn have been an agent or employee of the defendants. Indeed, the plaintiffs did not introduce any evidence as to the relationship that might have existed between Andrés Barrios and the defendants, and failed to establish by means of the evidence that either Virgilio Quiñones or Andrés Barrios was an agent or employee of the defendants. Nevertheless, the defendants had already admitted in their answer that the persons who made the excavations were their agents or employees and, therefore the plaintiffs were not obliged to prove the aforesaid relationship.

The main thing here is the determination of the lower court to the effect that the fact that Andrés Barrios was considered a master builder was sufficient, by itself, to establish his condition as an independent contractor. But as hereinafter noted the mere fact that a person is a master builder does not necessarily make him an independent con-

tractor. The condition or status of an independent contractor entails a relationship with another person which involves several factors and ingredients. All those factors and ingredients must clearly appear from the evidence for the plaintiff in order that a judgment of nonsuit may lie. A master builder may or may not be an independent contractor, in accordance with different circumstances hereinafter discussed. No specific and concrete definition of the phrase "independent contractor" may be attempted and no marked and fixed rule can be formulated as to the existence of that relationship and each case must be determined upon its own facts. 27 Am. Jur. 483; 75 A.L.R. 725, 726.

In *Atiles, Mgr.* v. *Industrial Commission*, 68 P.R.R. 107, 112, the term independent contractor is defined on the basis of the following elements:

1. Where a person employing another may prescribe what shall be done, but not how it is to be done or who is to do it.

2. Where the employer has the right and authority to control and direct the contractor in the performance of his work.

In *Atiles, Mgr.* v. *Industrial Commission*, 63 P.R.R. 573 and in *Tomás* v. *Industrial Commission*, 59 P.R.R. 852, this Court holds that an independent contractor is one who contracts for a job and employs workmen to accomplish it. In *Montaner, Mgr.* v. *Industrial Commission*, 57 P.R.R. 263, the owner of a mechanic shop repaired a tank for a gasoline company. This Court decided that he was an independent contractor, inasmuch as it appeared from the evidence that he did the work under his own direction, selected his assistants and was not subject to the control of the company with regard to the manner of accomplishing the repair. It was held that if the owner reserves no control over the means of accomplishing the work, but merely as to the result, the employment is independent and establishes the relation of contractee and contractor and not of master and servant.

The most important test refers to the control over the work which is reserved by the employer. Regardless of whether or not it is exercised, the important fact is the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. It is equally important to determine whether the instructions given will have to be followed. This same control may be exercised in several ways and the relationship between the parties might be determined according to the manner the control is exercised in the light of the circumstances of each case. If the means and manner of performance of the work are controlled, the person in charge of the work would be a servant and an independent contractor relationship would exist where the person performing the work is subject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. Retention by the owner of the right to inspect and supervise is compatible with the status of an independent contractor. The control of workmen doing manual labor is an important element, but if the owner reserves the right to discharge the workmen of an alleged contractor, such power tends in some degree to prove that the contractor is not independent. Furthermore, it is important to determine whether the owner furnishes the workmen and appliances to do the work, although that is not decisive. As to compensation, an independent contractor relationship arises when the contractor undertakes to perform the stipulated work for a specific sum and when his remuneration is computed with reference to the quantity of work performed by him. Nevertheless, the fact that the payment is made on the basis of the quantity of work does not imply by itself the existence of an independent contractor relationship where the rest of the evidence shows that the person employed is a servant. The identity of the person who pays the employees is a circumstance to be considered, although the possibility that a person pays the wages

expecting to be reimbursed, can not be ignored. Another important element is the power to terminate the contract at any time, since that fact would show that the person employed is not an independent contractor. It is also possible that a person may be an independent contractor as to certain work and yet be a servant as to other work for the same employer, and the decision would depend on the actual situation when the injury was inflicted. (The foregoing principles are established in 27 Am. Jur. 485–504; 75 A.L.R. 726; 20 A.L.R. 766; 19 A.L.R. 240, Restatement of the Law of Agency, volume 1, § 220.)

In the case at bar, the plaintiffs' evidence does not disclose the various elements which would enable the trier to determine the limitations and contours of Andrés Barrios' autonomy or independence. There was no evidence as to whether or not he was subject to the directions or control of the defendants and there was no evidence as to whether the defendants had reserved the power to determine the means of performing the work, nor was there evidence as to the manner in which Andrés Barrios and Virgilio Quiñones were paid, nor as to the person who furnished the equipment, nor as to whether the defendants had the authority to terminate any contract with Andrés Barrios at any time.

We have seen that for the purposes of a motion for nonsuit any reasonable inferences must be intended in favor of the plaintiff. The mere fact that a person is characterized as a master builder does not exclude the reasonable inference to the effect that he is not an independent contractor.

The term "master builder," by itself and separately, must not have a definitive legal connotation. The actual meaning of that term must always be considered. In *Santiago* v. *Torres*, 60 P.R.R. 259, 263, it was held that a master builder is not necessarily either a professor or a teacher within the meaning of those terms as used in Subdivision 2, § 1867 of our Civil Code, which refers to the three-year

prescription in connection with professors and teachers. The opinion points out that a "teacher" is, in part, "one who has special knowledge in a subject and handles it with ease." The opinion also recites (p. 263):

"A mere building contractor is not necessarily an expert in the art of building. Often persons engage in such business who have at their disposal sufficient capital or credit to undertake the work and who are advised by other persons familiar with the work to be done. The *professor* or *teacher* referred to in said legal provisions is, for instance, the architect or engineer who prepares the plans and specifications, or the person who directs or supervises the work; but it does not mean a mere contractor nor even an engineer or architect, nor an expert in such professions, who besides his professional work includes in the contract the cost of materials, labor, etc. It is well known that professional services as such constitute a comparatively small portion of the cost of a construction work where the latter is of some importance by reason of the cost of the materials, labor, etc."

The Supreme Court of the United States in *Rutherford Food Corporation* v. *McComb*, 331 U. S. 722, 729–30, upon referring to the applicability of the Federal Fair Labor Standards Act to certain employees, said in part as follows:

". . . Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act. . . . the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity." . . .

The lower court cited *Natal* v. *Bartolomey et al.*, *supra*, and *Colomé* v. *Guánica Centrale, supra*, as a ground for its order granting the motion for nonsuit. Those cases are not directly applicable hereto. The case of *Natal* v. *Bartolomey et al.*, *supra*, involved a master builder on the construction of a frame house, Román Natal, who was the master workman and superintendent of the building under construction. The witnesses testified that the defendant had nothing to do

with the work, although he sometimes paid the plaintiff his wages. It was not shown that the defendant had any intervention whatsoever in plaintiff's work. Therefore, there was evidence as to the absence of control on defendant's part. In addition, Natal's condition as an alleged employee was not admitted at all in the answer as happened here and that case did not involve a motion for nonsuit. Rather, the whole evidence was heard by the judge of the District Court of Ponce.

In *Colomé* v. *Guánica Centrale, supra,* it was concluded that Mr. Santos Vigo was an independent contractor. The opinion recites at page 444:

"A careful review of the facts in this case plainly shows that the plaintiff, Rufino Colomé, was in the employ of Santos Vigo, an independent contractor who had undertaken to move certain sacks of sugar produced by the Guánica Centrale from one part of a building to another, and again from the building to the wharf, when required so to do, at a stipulated sum per thousand sacks, and that he employed the plaintiff and other laborers to transfer the sacks as required, which they did for a fixed price paid them by the said Vigo."

Likewise, in that case there were no admissions in the answer as here, nor did it involve a motion for nonsuit. Furthermore, there was evidence of concrete facts and details determining an independent contractor relationship, as may be seen from the portion of the opinion copied above. ██ Even assuming that Andrés Barrios were an independent contractor, the evidence for the plaintiffs is compatible with the defendants' liability. For the purposes of the motion for nonsuit, we must assume that the evidence for the plaintiffs is true. Virgilio Quiñones, a witness for the plaintiffs, and the workman in charge of the aforesaid work, testified that he dug a ditch along the line dividing the properties of the plaintiffs and of the defendants and that in order to do so, he had to chop and did chop two brick walls with a pick, shovel and a sledge. The average

width of the second wall he chopped was 12 inches and its height was more or less two and a half feet. Said wall was underground and, according to the witness, "it was close to the boundary line and close to the dining room of the house of Pepe Christian [the plaintiff]." He also said: "Then, the wall of Pepe Christian's house came up to here. The foundation was attached to the wall thus. Then, the foundation was embedded in the wall. Then I chopped the wall through here." He went on saying that about twelve or fourteen feet of the wall stood upon the property of the defendants and from eight to ten feet upon the property of the plaintiffs, and that the part on the property of the defendants had the same dimensions as the portion on the property of the plaintiffs. The second wall he chopped ended at the foundation of the dining room of the plaintiffs' house and the foundation stood above the wall.

From the remainder of the plaintiffs' evidence it appears that as a result of those acts of Virgilio Quiñones the dining-room floor collapsed and that the plaintiff was injured when she fell down because of the collapse.

Now, where the work to be performed by a person implies by itself that said person must commit a trespass upon the property of another, the defendant who sent that person to do that work is liable, even though the workman be an independent contractor. If the employer ordered the act, his liability is established even if the person who performed the act was an independent contractor. 27 Am. Jur. 518, § 40. The annotation contained in 21 A.L.R. 1229 established the general doctrine prevailing in practically all the courts of continental United States, which doctrine we adopt and approve, to the effect that an employer is liable for the tortious acts of an independent contractor if the injuries caused are the direct and necessary result of the stipulated work, that is, if the work to be done can not be done without danger or injury to third parties and if its very nature

and existence are such as to cause or produce danger or injuries. In that case the injury results, not from the manner in which the work is done, but from the fact that it is done at all.

The Supreme Court of the United States has expressed its opinion as to this question. In *Weinman* v. *De Palma*, 232 U. S. 571, 58 L. ed. 733, the owner of a property adjoining another ordered an excavation along the line between the two lots in order to construct a party wall. The work was performed by an independent contractor, but in order to do it, it was necessary to make an excavation under a building located on the adjoining property and belonging to the plaintiff. The wall belonging to the plaintiff collapsed and plaintiff was injured. The Supreme Court of the United States stated:

"We agree with the Supreme Court of New Mexico that where the owner of demised premises makes a contract with an adjoining owner for the construction of a party wall, which contract cannot be carried out according to its terms without entry upon the demised premises and an undermining of the tenant's wall, and the adjoining owner or his servants in the performance of the contract do commit such a trespass upon the tenant's possession and undermine the wall, the contract is evidential of a command or approval of the trespass by the landlord, such as to render him liable ... for the resulting damages. (Citations.)

". . . where a trespass results in the destruction of a building," (the corresponding damages should be awarded).

Of course, if the contract does not imply the need of a trespass, the employer is not necessarily liable for the trespasses committed by the workman and not authorized by the employer. 21 A.L.R. 1268 *et seq.* Whether or not the defendants herein had authorized Andrés Barrios and Virgilio Quiñones to commit a trespass and whether, because of its nature, the excavation in the instant case necessarily implied an excavation within the property of the plaintiffs, or necessarily implied the chopping of a wall which supported the

750

house of the plaintiffs within their property, are questions to be decided when all the evidence presented by both parties is considered. However, the fact that the excavation itself required Virgilio Quiñones to accomplish the acts above mentioned upon the property of the defendants is a reasonable inference arising from the plaintiffs' evidence. Said inference may be overcome or refuted by all the evidence presented in this case, but Virgilio Quiñones' testimony implies that the motion for nonsuit should have been denied. (See also, 27 Am. Jur. 523, § 45, and cases therein cited to the effect that if an excavation necessarily results in the tearing down of the support of a building of an adjoining owner, the defendant can not escape liability on the ground that he employed an independent contractor; and to the same effect, see the Annotation in 23 A.L.R. 1033 *et seq.*)

The judgment appealed from will be reversed and the case remanded to the Superior Court, Mayagüez Section, for further proceedings not inconsistent with this opinion.