PARA TECHNOLOGIES TRUST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; TOM ANDERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Para Technologies Trust v. Commissioner
Docket Nos. 12089-91, 12242-91
United States Tax Court
T.C. Memo 1994-366; 1994 Tax Ct. Memo LEXIS 378; 68 T.C.M. (CCH) 294; August 2, 1994, Filed *378 Decision will be entered for petitioner in docket No. 12089-91. Decision will be entered under Rule 155 in docket No. 12242-91. For petitioners: Joe Alfred Izen, Jr., [1]Helena C. Papadopoulos, and Michael Louis Minns. For respondent: Paul B. Burns and Maria D. Murphy. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income tax: Para Technologies Trust: Additions to Tax
Year
Deficiency
Sec. 6653(b)
Sec. 6661
1987
$ 103,450
[1] $ 77,588
$ 25,862
1988
74,253
55,690
18,563
Tom Anderson: Additions to Tax Year
Deficiency
Sec. 6653(a)
Sec. 6653(b)
Sec. 6661
1987
$ 109,755
[1] $ 5,488
[1] $ 82,316
$ 27,439
1988
71,720
3,586
53,790
17,930
*379 All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. On brief, respondent concedes that no deficiencies in income tax, or additions to tax, are due from Para Technologies Trust (Para Tech). After this and other concessions, the issues remaining for decision are: (1) Whether Para Tech should be respected as a distinct taxable entity for Federal income tax purposes, and if it is to be so respected, then (2) whether the income received by Para Tech is taxable to Tom Anderson (Anderson) under the grantor trust provisions of sections 671 through 679; (3) whether Anderson is liable for additions to tax for fraud pursuant to section 6653(b); or, alternatively, whether he is liable for additions to tax for negligence pursuant to section 6653(a); and (4) whether Anderson is liable for additions to tax for substantial understatement of income tax pursuant to section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Para Tech had its principal place *380 of business in California, and Anderson resided in Santa Monica, California, at the time they filed their petitions. I. Nassau Life Insurance Co., Ltd. and Joe Alfred Izen, Jr.
Nassau Life Insurance Co., Ltd. (Nassau Life) promoted the use of domestic and foreign entities to shelter U.S. business and investment income from Federal income taxation. Nassau Life engaged in this activity through representatives known as information officers and through the dissemination of printed materials. Joe Alfred Izen, Jr. (Izen) was counsel to Nassau Life during both years in issue. In the course of that representation, among other services, he prepared and issued two opinion letters that related to the multiple-entity tax shelter promoted by Nassau Life. In an opinion letter dated September 26, 1983 (1983 opinion letter), Izen discussed the legal status of contractual trust companies that were being promoted by Nassau Life, and concluded that they were valid legal entities. In an opinion letter dated June 20, 1985 (1985 opinion letter), Izen discussed the tax aspects of these contractual trust companies, and concluded that the grantor trust provisions of the Internal Revenue Code *381 (Code) did not apply to contractual trust companies. However, neither of Izen's opinion letters discussed cases decided contrary to the positions he was espousing. II. Tom Anderson and Frederick Ferber
Anderson dropped out of school after completing the eighth grade. Since age 14, Anderson has been a video engineer. A video engineer designs, operates, and repairs electronic equipment. At the time of trial, Anderson was 31 years old. Beginning in late 1982, and continuing until January 10, 1985, Anderson operated a sole proprietorship under the name "Videolab", which manufactured, sold, modified, and repaired electronic equipment. On February 8, 1984, Anderson filed a fictitious business name statement with the County Clerk of Los Angeles County, California, showing his use of the name "Videolab". Anderson and Frederick Ferber (Ferber) met in India in 1977 and began a long-lasting friendship. Ferber is a songwriter with a high school education. Ferber has no significant training or experience in electrical engineering or electronics. Ferber is 6 years older than Anderson. In 1984, Anderson told Ferber that he was interested in developing technology with people from *382 foreign countries. Anderson said that he wanted to form a legal entity that would permit a foreign investor to assist him in developing technology while minimizing his accounting and tax burdens. At that time, Ferber was employed as an information officer for Nassau Life. Ferber described to Anderson the supposed advantages of the specific trust structure that was being promoted by Nassau Life. He explained that, according to Nassau Life, this structure had the potential of reducing U.S. Federal income taxation or deferring taxation until distributions were made to beneficial interest certificate holders, and that Nassau Life had been promoting this structure since 1978. Ferber made copies of Nassau Life's written promotional materials describing its trust structure, and provided these copies to Anderson. In describing Nassau Life's trust structure to Anderson, Ferber relied at least partially on Izen's 1983 opinion letter. Ferber subsequently provided access to that letter to Anderson. Anderson then visited Nassau Life's office in Inglewood, California, to further inquire about this structure. III. Para Tech
Relying in part on Ferber's advice and in part on the opinions *383 expressed in Izen's 1983 opinion letter, Anderson decided to implement the trust structure being promoted by Nassau Life. On January 10, 1985, Chris M. Riley (Riley), as creator, Sarah Martel (Martel), as exchanger, and Ferber, as trustee, executed a document captioned "Contract" (Para Tech agreement), pursuant to which Para Tech was formed as a common law business trust. [2]
At the time of Para Tech's formation, Riley and Martel were associated with Scientific Asset Management, the U.S. agent for Nassau Life in Nassau Life's efforts to promote its trust structure. At the time of Para Tech's formation, Riley appointed Ferber as Para Tech's trustee. Ferber never owned a *384 beneficial interest in Para Tech, and Ferber never received compensation or other economic benefit as a result of serving as Para Tech's trustee. On January 10, 1985, the date of Para Tech's formation, Ferber appointed Anderson as Para Tech's president and Kevin Irelan (Irelan) as Para Tech's secretary, and delegated to the president or secretary the power "to operate the Company affairs and business matters on behalf of the Certificate holders and Trustee of the Company". The power delegated to them was limited to "the execution of business and routine day-to-day matters not requiring a Trustee Minute". At the time of Para Tech's formation, Martel exchanged $ 100 for a certificate evidencing her ownership of 100 capital units of Para Tech, which constituted all of the beneficial interest in Para Tech. Para Tech was authorized to distribute all income annually to its certificate holder. Anderson then executed a document pursuant to which he provided $ 100 cash plus assignments on a non-exclusive basis of certain intangible personal property to Para Tech in exchange for a certificate representing Martel's 100 capital units of Para Tech. The intangible personal property that Anderson *385 assigned to Para Tech included: (a) Items collectively described as "First Generation Time Code Retrofit Technology" (first generation technology); (b) items collectively described as "Second Generation Time Code Retrofit Technology" (second generation technology); and (c) items collectively described as "Type 6 Time Code Retrofit Technology" (type 6 technology). In late January or early February 1985, Anderson filed a certificate of abandonment of the fictitious business name "Videolab" with the County Clerk of Los Angeles County, California. Immediately after Anderson abandoned the fictitious business name "Videolab", Para Tech filed a fictitious business name statement with the County Clerk of Los Angeles County, California, indicating that Para Tech was using the fictitious business name "Videolab" in its business. Thereafter, Para Tech conducted business activities that were virtually identical to those previously conducted by Anderson in his sole proprietorship. IV. Atram Trust
At the same time that Para Tech was formed, Atram Trust (Atram) was formed. Walter R. Simons, of the Turks and Caicos Islands, British West Indies, as creator, Cynthia A. Francis (Francis), *386 also of the Turks and Caicos Islands, as exchanger, and Nassau Life, as trustee, executed a document captioned "Contract" (Atram agreement), pursuant to which Atram was formed as a common law business trust. Veronica D. Williams (Williams) signed the Atram agreement on behalf of Nassau Life. Francis was employed by or associated with Nassau Life. Anderson has never met Walter Simons, Francis, or Williams, nor has Anderson ever visited the Turks and Caicos Islands. The Para Tech agreement and the Atram agreement are identical in every material respect, except for the identity of the parties, the situs of the trusts created, and the choice of law provisions. On January 10, 1985, the day of Para Tech's and Atram's formation, Nassau Life appointed Anderson as Atram's president/agent, and delegated to him the power "to operate the Company affairs and business matters on behalf of the Certificate Holders and Trustee". The power delegated to Anderson was limited to "the execution of business and routine day-to-day matters not requiring a Trustee Minute". The written instrument, captioned "Minutes of Atram Investment Group", pursuant to which Anderson was appointed as Atram's president, *387 was signed on behalf of Nassau Life by Robert Chappell (Chappell). Anderson has never met Chappell. At the time of Atram's formation, Francis exchanged $ 100 for a certificate evidencing her ownership of 100 capital units of Atram, which constituted all of the beneficial interest in Atram. Anderson then executed a document pursuant to which he assigned certain intangible personal property on a nonexclusive basis to Atram in exchange for a certificate representing 99 of Francis' capital units of Atram. The intangible personal property that Anderson assigned to Atram included: (a) First generation technology; (b) second generation technology; (c) type 6 technology; and (d) items collectively described as "Computer Aided Design System Plan" (CAD plan). The first generation technology, second generation technology, and type 6 technology that Anderson assigned to Atram are identical to the first generation technology, second generation technology, and type 6 technology that Anderson had previously assigned to Para Tech. After January 10, 1985, neither Walter Simons nor Francis had further involvement with Atram, except that Francis continued to hold one capital unit of Atram. Francis *388 never received any distributions with respect to the capital unit of Atram that she retained. V. Para Tech's and Atram's Business Agreements With Anderson, With Each Other, and With Mr. Smith
On January 17, 1985, Atram provided certain unspecified items of property to Para Tech, "as defined by separate contract", in exchange for Anderson's certificate representing 100 capital units of Para Tech. The intangible personal property that Atram assigned to Para Tech pursuant to this agreement included: (a) First generation technology; (b) second generation technology; and (c) type 6 technology. The first generation technology, second generation technology, and type 6 technology that Atram assigned to Para Tech are identical to the first generation technology, second generation technology, and type 6 technology that Anderson had previously assigned to both Para Tech and Atram. Because Atram was now Para Tech's sole certificate holder, Atram held the entire beneficial interest in Para Tech. Para Tech was authorized to distribute all income annually to its certificate holder. The certificate holder did not have the power to hire or fire Para Tech agents or employees, to change *389 the terms of the trust agreement, or to vote or participate in the management of company affairs. The written instrument, captioned "Minutes of Atram Investment Group", pursuant to which the transfer was authorized, was signed on behalf of Nassau Life by Delphine Simons, whom Anderson has never met. The second generation technology consists of a unique magnetic head design, a unique circuit board design, and unique designs of key items. On August 8, 1985, Anderson determined that he was unable to provide the second generation technology to Atram. Accordingly, on that date, Atram released Anderson from his obligation to provide the second generation technology, type 6 technology, and CAD plan to Atram, in exchange for Anderson's surrender of 95 of the 99 capital units of Atram that he held. After Anderson tendered the 95 capital units back to Atram, Atram purportedly became involved with an unidentified Chilean national who was referred to at trial as "Mr. Smith" (Smith). [3]Smith allegedly is a professor of mathematics. He has no background or experience in electrical engineering or electronics. By a written instrument dated August 15, 1985, Smith allegedly entered into an *390 agreement pursuant to which he assigned certain intangible personal property to Atram in exchange for the 95 capital units of Atram that Anderson had previously tendered back to Atram. The intangible personal property that Smith allegedly assigned to Atram included the second generation technology, type 6 technology, and CAD plan. This arrangement gave Smith 95 percent of Atram, Anderson 4 percent, and Francis 1 percent. The trustee kept sole discretion as to whether distribution should be made to the beneficiaries; the beneficiaries had no right to compel distribution of any of the trust assets. The second generation technology and type 6 technology that Smith allegedly assigned to Atram are identical to the second generation technology and type 6 technology that Anderson had assigned to both Atram and Para Tech, that Atram had assigned to Para Tech, and that Atram had released Anderson from his obligation to provide. The CAD plan that Smith allegedly assigned *391 to Atram is identical to the CAD plan that Anderson had previously assigned to Atram, and that Atram had released Anderson from his obligation to provide. As the second generation technology was perfected over the next several years, Atram assigned that technology to Para Tech. As a result, Para Tech's sales greatly improved. Atram also provided ongoing support for the technology that it had assigned to Para Tech. In return, over the years, Para Tech transferred substantial sums of money to Atram. VI. Anderson's, Para Tech's, and Atram's Financial Dealings
From some time prior to December 1984, until December 1985, Anderson maintained a checking account with First Interstate Bank. Anderson closed this account on December 16, 1985. During the years in issue, Anderson did not maintain a personal checking account at any financial institution. On February 5, 1985, and October 8, 1987, Para Tech opened two checking accounts in the name of "Videolab/Para Tech Technologies Trust" (Videolab account 1 and Videolab account 2, respectively) at City National Bank. Anderson, Ferber, and Irelan were authorized to withdraw or disburse funds from these two accounts. In February *392 1985, Atram opened a checking account in the name of "Atram Investment Group" (Atram account 1) at First Interstate Bank. On January 25, 1988, and October 7, 1988, Atram opened two checking accounts in the name of "Atram Investment Group" (Atram account 2 and Atram account 3, respectively) at City National Bank. At the time of the opening of Atram account 2 and Atram account 3, Anderson was requested to furnish Atram's tax identification number to City National Bank. Both times, he gave City National Bank the tax identification number assigned to Nassau Life. The record does not indicate what tax identification number was given to First Interstate Bank at the time of the opening of Atram account 1. Anderson and Irelan were authorized to withdraw or disburse funds from the three Atram accounts. During 1985, 12 checks payable to Atram, in the aggregate amount of $ 62,000, were drawn on Videolab account 1. During 1986, nine checks payable to Atram, in the aggregate amount of $ 55,400, were drawn on Videolab account 1. During 1987, Para Tech transferred, by various means, a total of $ 209,710 to Atram. During 1988, Para Tech transferred, by various means, a total of $ 261,175 *393 to Atram. On several different occasions during 1985, Anderson sold tools and hardware to Para Tech. The items that Anderson sold to Para Tech are items that Anderson had previously used in his sole proprietorship. After Para Tech purchased these items, Para Tech used them in its business. On February 15, 1985, Anderson, as Para Tech's agent, issued a payment to Scientific Asset Management for services rendered in connection with Para Tech's formation. At all times relevant to this case, Anderson resided in an apartment located at 1208 Broadway in Santa Monica, California. In October 1985, Videolab moved its principal place of business from Anderson's apartment in Santa Monica, California, to 1978B Del Amo Boulevard in Torrance, California. On several different occasions during the years in issue, Anderson's apartment rent was paid by checks drawn on Videolab account 1 or Atram account 3. On several different occasions during the years in issue, the telephone and utility bills for this address, as well as Anderson's medical expenses, were paid by checks drawn on Videolab account 1. In addition, during 1985 and 1986, Anderson cashed several checks that were drawn on Videolab *394 account 1. When Anderson traveled for Para Tech, he frequently bought groceries, instead of eating at restaurants, and paid for these groceries with Para Tech funds drawn on Videolab account 1. By a written instrument captioned "Minutes of Atram Investment Group" dated November 12, 1985, Nassau Life, as Atram's trustee, authorized Atram to purchase an automobile for an amount not to exceed $ 15,000, and authorized Atram's president (i.e., Anderson) to use Atram's automobile. The minutes were signed on behalf of Nassau Life by Delphine Simons. Anderson subsequently sold his 1979 Volkswagen Super Beetle to Atram for $ 600. After he sold his automobile to Atram, Anderson continued to use it for personal purposes. Anderson was not required to pay Atram for the personal use of the automobile. On three occasions between November 30, 1988, and September 15, 1989, checks payable to the order of Walt's Auto, in the aggregate amount of $ 830, were drawn on Atram account 3. Other checks drawn on Atram account 3 included checks payable to a retail record store, an outdoor equipment retailer, and a gourmet food and wine shop. On several occasions during 1989, checks payable to the order *395 of Patricia Prado (Prado) were drawn on Atram account 3, in the aggregate amount of $ 11,670. Prado is Smith's daughter. During the years in issue, Prado had no relationship to Atram or Para Tech, but she was romantically involved with Anderson, whom she had met through Smith. At the time of trial, Prado was married to Anderson, and Smith was identified as Anderson's father-in-law. The funds paid to Prado from Atram account 3 were to defray her living expenses. She was not required to perform, and did not perform, any services for Para Tech or Atram in return for those payments. In fact, Prado had an "immigration problem" and was not permitted to work in the United States at the time. By a written instrument captioned "Minutes of Atram Investment Group" dated August 9, 1985, Nassau Life, as Atram's trustee, authorized the granting of a $ 75,000 "personal line of credit" to Anderson by Atram. Anderson could draw on the line of credit by causing Atram's president (i.e., Anderson) to issue financial instruments to any person. The minutes were signed on behalf of Nassau Life by Delphine Simons. By a written instrument captioned "Minutes of Atram Investment Group" dated May 4, *396 1990, Nassau Life, as Atram's trustee, authorized Atram to lend up to $ 250,000 to Para Tech on or after January 1, 1991. The minutes further provided that Atram's president (i.e., Anderson) would administer the loan from Atram to Para Tech. The minutes were signed on behalf of Nassau Life by Delphine Simons. By a written instrument captioned "Minutes of Atram Investment Group" dated August 12, 1991, Nassau Life, as Atram's trustee, authorized Atram to purchase Para Tech's "inventory, equipment, and physical assets". None of the terms of the purchase are set forth in the minutes. The minutes further stated that Atram's president (i.e., Anderson) would administer the purchase. The minutes were signed on behalf of Nassau Life by Delphine Simons. VII. Atram's Winding Up
By a written instrument captioned "Minutes of Atram Investment Group" dated November 9, 1992, which by its terms reflects actions taken at a meeting held in Sullivan County, New York, on that date, Nassau Life, as Atram's trustee, authorized Atram's exercise of the option previously granted by Francis to Atram to purchase back for $ 10 the one capital unit of Atram held by her. Atram had no such option *397 with respect to Anderson's or Smith's certificates. The minutes were signed by Anderson, by Irelan, and on behalf of Nassau Life by Delphine Simons. Anderson has not visited Sullivan County, New York, since 1988. By a written instrument captioned "Minutes of Atram Investment Group" dated November 9, 1992, which by its terms reflects actions taken at a meeting held in Sullivan County, New York, on that date, Nassau Life, as Atram's trustee, authorized Atram's winding up and the distribution of its assets to the holders of the capital units. The minutes were signed by Anderson, by Irelan, and on behalf of Nassau Life by Delphine Simons. At the time of trial, Nassau Life was bankrupt. VIII. Para Tech's and Anderson's Tax Returns
On the Para Tech 1987 and 1988 U.S. Fiduciary Income Tax Returns (Para Tech 1987 return and Para Tech 1988 return, respectively), Para Tech claimed deductions in the amounts of $ 209,710 and $ 261,175, respectively, for amounts distributed to Atram as Para Tech's beneficiary. On Schedules K-1 attached to the Para Tech 1987 return and the Para Tech 1988 return, Para Tech characterized the amounts distributed to Atram during those taxable years as *398 consisting entirely of dividend income. On Schedules K-1 attached to the Para Tech 1987 return and the Para Tech 1988 return, Para Tech identified Atram using the tax identification number assigned to Nassau Life. Nassau Life, as trustee of Atram, directed Anderson, the president/agent of Atram, to give Nassau Life's tax identification number to Para Tech for use in identifying Atram on returns to be filed by Para Tech. Atram has never requested nor been assigned a tax identification number. Para Tech did not file any Internal Revenue Service Forms 1042, Annual Withholding Tax Return for U.S. Source Income of Foreign Persons, or any Internal Revenue Service Forms 1042S, Foreign Person's U.S. Source Income Subject to Withholding, for any taxable period that included any part of the calendar years 1987 or 1988. During 1987, Para Tech gave Internal Revenue Service Forms 1099-MISC, Miscellaneous Income, to persons other than employees who performed services for Para Tech, and filed those forms with the Internal Revenue Service. Atram never filed any Federal income tax returns or information returns for any taxable period that includes any part of the calendar years 1987 or 1988. *399 Anderson timely filed U.S. Individual Income Tax Returns for 1987 and 1988 (Anderson 1987 return and Anderson 1988 return, respectively). On the Anderson 1987 return, Anderson reported total income of $ 4,102, consisting of $ 3,900 of dividend income and $ 202 of income from an unincorporated video engineering business. On the Anderson 1988 return, Anderson reported total income of $ 4,878, consisting of $ 4,650 of dividend income and $ 228 of income from the unincorporated video engineering business. For both years, he did not report any salary or wage income and did not report any income attributable to the rent-free use of the automobile that was provided to him by Atram. Because Anderson reported more than $ 400 of dividend income for each year, he was required to complete part III (consisting of lines 10 and 11) of Schedules B attached to the Anderson 1987 return and the Anderson 1988 return. Line 11 of Schedules B asks the question "Were you the grantor of, or transferor to, a foreign trust which existed during the current tax year, whether or not you have any beneficial interest in it?" and requires the taxpayer to check either a box labeled "yes" or a box labeled "no". *400 On line 11 of Schedules B attached to the Anderson 1987 return and the Anderson 1988 return, Anderson checked the box labeled "no". Anderson has never filed Internal Revenue Service Form 3520, Creation of or Transfers to Certain Foreign Trusts, or Internal Revenue Service Form 3520-A, Annual Return of Foreign Trust with U.S. Beneficiaries. In preparing the Para Tech 1987 return, the Para Tech 1988 return, the Anderson 1987 return, and the Anderson 1988 return, Anderson relied in part on Izen's 1985 opinion letter, which states that the grantor trust provisions of the Code do not apply to contractual trust companies. He also relied on instructions given to him by Ferber, the trustee of Para Tech. Ferber, in turn, relied on Izen's 1985 opinion letter as well as on advice given to him by an accountant associated with Nassau Life. Anderson did not consult with an attorney or an accountant in order to determine whether it was proper for Para Tech to file Forms 1041, U.S. Fiduciary Income Tax Returns, which it filed for taxable years 1987 and 1988. IX. Respondent's Examination of Para Tech's and Anderson's Tax Returns
Lawrence G. Camporeale (Camporeale) was the internal revenue *401 agent assigned to examine the Federal income tax liabilities of Anderson and Para Tech for the taxable years in issue. On February 6, 1990, Camporeale met with Anderson at Para Tech's place of business. During the course of that meeting, Camporeale asked Anderson to provide identification. Anderson showed Camporeale his driver's license and gave Camporeale a Social Security number. The Social Security number that Anderson gave to Camporeale is not Anderson's correct Social Security number. On February 22, 1990, Camporeale mailed a letter to Anderson scheduling a conference for March 1, 1990, and encouraging Anderson to provide certain documents. Anderson did not appear on March 1, 1990, and did not contact Camporeale prior to that date to reschedule the conference. In February 1990, Ferber, as trustee of Para Tech, directed Anderson, the president of Para Tech, to hire William Leon Meeks (Meeks), a certified public accountant, to represent Para Tech. Anderson and Para Tech then engaged Meeks to represent them in connection with the examination. Meeks had not previously represented Anderson, Para Tech, or Ferber in any capacity. On February 27, 1990, Camporeale received a *402 letter from Meeks stating that he had a power of attorney authorizing him to represent Para Tech with respect to its 1987 tax year. On February 28, 1990, Camporeale mailed a letter to Meeks asking for copies of substantially the same documents he had requested from Anderson. Meeks advised Anderson and Ferber that they were obligated to provide all information and documents requested by respondent. Anderson refused to make available to Meeks any documents relating to Atram. Meeks turned over all documents that he received from Anderson or Ferber to Camporeale. On March 19, 1990, Camporeale received the following documents from Meeks: (a) A copy of the Para Tech agreement; (b) copies of statements for Videolab account 1 for the period December 29, 1986, through December 29, 1987; and (c) copies of statements for Videolab account 2 for the period October 8, 1987, through December 8, 1987. Camporeale and Meeks met at Camporeale's office on May 11, 1990. At that meeting, Camporeale served a Form 4564, Information Request, which had been prepared by respondent's international examiner, Dennis Bracken, on Meeks. Dennis Bracken served another Form 4564 on Meeks on June 29, 1990. *403 Very little of the information requested in the Forms 4564 was ever provided. On March 19, 1991, respondent timely mailed a notice of deficiency, determining deficiencies in income tax and additions to tax for the taxable years 1987 and 1988, to Anderson at his last known address by certified mail. On December 9, 1992, respondent mailed a Branerton letter to Anderson. On December 22, 1992, respondent prepared and signed Respondent's First Set of Interrogatories to Petitioner (interrogatories) and Respondent's First Request for Production of Documents (document request), and caused them to be served on Anderson. Responses to the interrogatories were required to be served on or before February 5, 1993. Documents were required to be produced at respondent's counsel's office on February 5, 1993. Among the documents that Anderson was requested to produce were all documents relating to Para Tech's and Atram's bank accounts. Anderson did not appear at respondent's counsel's office on February 5, 1993, to make any documents available for inspection or copying as provided in the document request. Anderson did not provide written responses to the interrogatories or the document request *404 on or before February 5, 1993. On February 8, 1993, respondent filed Motions to Compel Responses to the Interrogatories and the Document Request. On February 9, 1993, this Court entered an order in docket No. 12242-91 granting the motions to compel. On February 10, 1993, respondent received responses to the interrogatories. On February 23, 1993, respondent received supplemental responses to the interrogatories. On February 25, 1993, petitioners made approximately 2,500 pages of documents available for inspection and copying. The bulk of the documents that were made available were copies of canceled checks and deposit receipts for 1985 and 1986 for Videolab account 1. No documents relating to Atram account 1 were ever produced. On January 19, 1993, Anderson sent letters to City National Bank and First Interstate Bank in a purported attempt to obtain copies of documents relating to Para Tech's and Atram's accounts with those banks. In those letters, Anderson states the following: I find it necessary to personally request copies of certain bank records for accounts which are not mine. I do not have an account at any branch of * * * [your institution]. This request is *405 made personally and is not made as an Agent of Atram Investment Group. I am not presently authorized as an Agent of Atram Investment Group to make such a request.
In a letter dated February 22, 1993, City National Bank refused to make the requested records available to Anderson, because "City National Bank cannot produce records to other than its customer without its customer's consent". On March 16, 1993, petitioners notified respondent that Anderson, in his capacity as president/agent of Atram, had arranged for certain documents to be produced at the U.S. Embassy in Santiago, Chile, that day. They had been requested initially by respondent in the document request. They were made available to respondent on the day before the trial of this case, with the exception of one document, which was made available to respondent on the second day of the trial. OPINION Issues 1 and 2. Para Tech's Officers and Trustee Disregarded Para Tech's Form to Such an Extent That Para Tech Will Be Disregarded as a Separate Entity
Anderson contends that Para Tech was a valid entity, legally independent and separate from Anderson as an individual, and that Para Tech and the transactions *406 in which it took part should be respected for Federal tax purposes. Respondent contends that Para Tech is a sham, that the transactions in which Para Tech purported to engage were totally without economic substance, and that Para Tech existed for no purpose aside from being used in a scheme to obtain tax benefits at no economic cost to Anderson. Respondent contends, in the alternative, that if we conclude that Para Tech is a valid trust entity for tax purposes, then Anderson is taxable on the income reported as earned by Para Tech under the grantor trust provisions of sections 671 through 679. We believe that Para Tech and Atram are merely paper entities, devoid of economic substance and formed by Anderson solely as a scheme to avoid taxation on the income from Videolab's business. Accordingly, we hold that the trust structures of these entities should not be respected for Federal income tax purposes, and that the income from Para Tech is taxable wholly to Anderson. We reach the latter conclusion because we are not entirely convinced that there was any meaningful economic relationship between Smith and Para Tech. However, assuming arguendo that Smith had an economic relationship *407 with Para Tech, based on the record herein, we are unable to determine how much of Para Tech's income is attributable to Smith's services or contribution. In the absence of evidence linking a specified portion of Para Tech's income to Smith, all of such income must be attributed to Anderson. Due to the aforementioned holdings, we need not deal with respondent's alternative contention. It is well settled that taxpayers have the right to conduct their transactions in such a manner and form as to minimize or altogether avoid the incidence of taxation by whatever means the law permits. Gregory v. Helvering, 293 U.S. 465, 469 (1935). The Government, however, is not required to apply the tax laws in accordance with the form employed by the taxpayer where that form is a sham or is inconsistent with economic reality. Higgins v. Smith, 308 U.S. 473, 477 (1940). Application of these principles requires us to look beneath the surface of the entities and transactions at issue to examine their reality. Professional Servs. v. Commissioner, 79 T.C. 888, 924 (1982). When the form of the transaction *408 has not, in fact, altered any cognizable economic relationships, that form will be ignored and the law will be applied according to the substance of the transaction. Markosian v. Commissioner, 73 T.C. 1235 (1980). These principles apply even though an entity or entities may have been properly formed and have a separate existence under applicable local law. Zmuda v. Commissioner, 79 T.C. 714, 720 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). The present case involves a common law business trust, commonly known as a Massachusetts trust. A Massachusetts trust is: a form of business organization consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest is divided, which certificates entitle the holders to share ratably in the income of the property, and, on termination of the trust, in the proceeds thereof * * *. [12A *409 C.J.S., Business Trusts, sec. 2 (1980); fn. refs. omitted.]
In general, California law recognizes the validity of Massachusetts trusts. See Goldwater v. Oltman, 210 Cal. 408, 292 P. 624 (1930). However, in Goldwater the California Supreme Court held that in order to validly form a business trust, the settlors must transfer the legal title to property "to trustees, with complete power of management in such trustees free from the control of the creators of the trust". Id. at 416, 292 P. at 627. In the present case, immediately after Para Tech was formed, the trustee (i.e., Ferber) delegated virtually complete control over its business and assets back to the settlor (i.e., Anderson). After that delegation of authority, Ferber ceased to play any meaningful role in the management of Para Tech. Thus, an essential requirement for the formation of a business trust, the separation of legal title from the settlor's control, was missing. With respect to Atram, the record is devoid of any evidence that the requirements of Turks and Caicos Islands law were observed in connection with its *410 formation. In fact, the record is devoid of any evidence of what those requirements are. The question of compliance with Turks and Caicos Islands law was squarely placed in issue by respondent in her answer in this case. Anderson has the burden of proof with respect to this issue. He cannot rest solely on the denial of respondent's allegation; he must come forward with evidence. He has not done so. Therefore, we must conclude that Atram is a legal nullity, which can have no significance for tax purposes. Most of the parties to the Para Tech agreement and the Atram agreement, and the persons who signed the minutes authorizing actions by Para Tech and Atram, are persons who were essentially unknown to Anderson. Riley, Martel, Walter Simons, Delphine Simons, Francis, and Chappell each came on the scene for a brief moment, signed a few documents, and disappeared. None of them ever played any meaningful role in the affairs of Para Tech or Atram. The use of strangers as signers of organizational documents, and the failure of the nominal trustees of trusts to have any meaningful role in the operation of those trusts, have been repeatedly cited by this Court as evidence that the *411 entities formed pursuant to those documents lack economic substance. See, e.g., Paulson v. Commissioner, T.C. Memo. 1991-643, affd. without published opinion 994 F.2d 843 (8th Cir. 1993); Zmuda v. Commissioner, supra at 720-721; Akland v. Commissioner, T.C. Memo. 1983-249, affd. 767 F.2d 618 (9th Cir. 1985). The manner in which the organization of the entities was accomplished lends additional support to the conclusion that they were mere paper constructs, which should be ignored for tax purposes. After Para Tech and Atram were formed, there was no meaningful change in the manner in which the Videolab business was operated. Immediately after Para Tech's formation, Ferber appointed Anderson as Para Tech's president and delegated virtually complete control over Para Tech's affairs to him. Immediately after Atram's formation, Nassau Life, as nominal trustee of Atram (which owned Para Tech), appointed Anderson as Atram's president/agent, with similarly broad authority. This abdication of responsibility by trustees, resulting in effective *412 control of the trust by the settlor, demonstrates that the formation of the trust lacks economic substance. See Paulson v. Commissioner, supra; Vercio v. Commissioner, 73 T.C. 1246, 1250-1251 (1980). Anderson surrendered the use of the fictitious business name "Videolab", which was immediately assumed by Para Tech. All of the tangible and intangible assets that Anderson had previously used in his sole proprietorship were transferred to Para Tech and were used by Para Tech in the same business activity. Anderson worked extremely long hours in the business, while Ferber, the nominal trustee, had virtually no involvement in the business. Anderson continued to make all important business decisions -- what products would be manufactured and sold, what prices would be charged, what employees would be hired or fired -- with little or no input from anyone else. In short, after Para Tech and Atram were formed, Anderson "conducted * * * [his] business and lived * * * [his] private * * * [life] exactly the same as before the trust was created." Markosian v. Commissioner, supra at 1243. *413 The flow of economic benefits among Para Tech, Atram, and Anderson is a variation on the so-called circular flow common to numerous tax evasion schemes involving the use of foreign trusts. Anderson performed services for Para Tech, for which he was not compensated. Para Tech earned income from the sale of products designed and manufactured by Anderson. Para Tech made trust distributions to Atram. Atram extended a line of credit to Anderson, which he was responsible for administering. Because Anderson had signature authority on all of Para Tech's and Atram's bank accounts, he could effectively disburse money to himself at any time. He could, and did, use Para Tech's and Atram's funds to pay his personal and living expenses. In fact, Anderson was so sure that he could use Para Tech and Atram to pay his personal and living expenses that he closed all of his own bank accounts. Para Tech and Atram paid Anderson's rent, utility bills, and medical expenses. For a time, Atram supported Anderson's girlfriend. Atram provided Anderson with the rent-free use of a car, the same car that Anderson had previously sold to Atram, and Atram paid to maintain that car. The record includes checks *414 drawn on Atram account 3 that appear to represent payment of personal and living expenses of Anderson. Those checks include checks payable to a retail record store, an outdoor equipment retailer, and a gourmet food and wine shop. At trial, Anderson testified to purported business purposes for those expenses. This was not corroborated by any other witness or by any documentary evidence. We are not bound to accept, and do not accept, Anderson's self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). It is clear that at all times relevant to this case, Anderson treated the Para Tech and Atram accounts as though they were his personal accounts. The circular flow has consistently been regarded by this Court as compelling evidence that arrangements involving multiple trusts lack economic substance. See, e.g., Professional Servs. v. Commissioner, 79 T.C. at 928; Tatum v. Commissioner, T.C. Memo. 1990-119; Akland v. Commissioner, supra. *415 Finally, neither Anderson, Para Tech, nor Atram filed all the necessary Federal tax returns, or included the required information on the returns that they did file. As noted above, if Anderson had actually transferred assets to Atram, he should have answered "yes" on line 11 of Schedules B attached to his returns. He should also have filed Form 3520. He did neither. During 1987 and 1988, Para Tech reported that it distributed U.S. source dividend income to Atram. Para Tech did not withhold tax and file Forms 1042 and 1042S as is required by section 1441 and section 1.1461-2, Income Tax Regs. The amount of the purported dividends was more than $ 600 in both 1987 and 1988. Therefore, Atram should have filed Forms 1040NR for 1987 and 1988 reporting that income, and should have paid taxes on it. See sec. 6012(a)(4); see also sec. 1.6012-3(a)(1)(ii), Income Tax Regs. It did not file any returns, and there is no evidence that it paid any tax. In both 1987 and 1988, Para Tech earned U.S. source interest income. It purportedly distributed that interest income to Atram. If so, it should have withheld tax and filed Forms 1042 and 1042S. It did not. Failure to file returns that *416 are consistent with the purported economic substance of the entities and the transactions is further evidence that the substance does not exist. During the years in issue in this case, Atram did not have a tax identification number that uniquely identified it, despite the fact that it should have obtained one and furnished it to Para Tech for inclusion in Para Tech's Schedules K-1. See sec. 6109(a); sec. 301.6109-1(b), (d)(2), Proced. & Admin. Regs. Instead, Atram was identified using a number that had been assigned to Nassau Life. This is further evidence that Anderson did not treat Atram as an economically viable and separate entity. As we said in Markosian v. Commissioner, 73 T.C. at 1245: "Since petitioners did not respect this trust as a separate entity, we can see no reason to do so". Likewise, we herein hold that Para Tech should be disregarded as a separate entity for Federal income tax purposes and all of its income should be attributable to Anderson. Issue 3. Anderson Is Not Liable for Additions to Tax for Fraud
Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). For taxable *417 year 1987, section 6653(b)(1)(A) and (B) provides that if any portion of a deficiency in income tax is due to fraud, additions to tax are imposed in amounts equal to 75 percent of the portion of the underpayment which is attributable to fraud and 50 percent of the interest due on the portion of the underpayment which is attributable to fraud. For taxable year 1988, section 6653(b)(1) provides that if any portion of a deficiency in income tax is due to fraud, an addition to tax is imposed in an amount equal to 75 percent of the underpayment (excluding any portion of the underpayment which the taxpayer establishes is not attributable to fraud). To prevail, respondent must prove by clear and convincing evidence that some part of the underpayment of tax was due to fraud. Sec. 7454(a); Rule 142(b). To do so, respondent must establish that Anderson intended to evade taxes believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81. *418 The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner, supra at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States, 317 U.S. 492 (1943); Gajewski v. Commissioner, supra at 200; Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Although there are several factors or "badges" existing *419 in this case which might indicate fraud, on balance, we believe that respondent has not proven fraud by clear and convincing evidence. Anderson was not familiar with complex financial structures. He never attended high school, ceasing his formal education with the completion of eighth grade. Anderson's lack of financial sophistication is reflected in his testimony that he was uncertain as to the nature of his obligations. Anderson relied heavily on Izen and Nassau Life. Thus, we find respondent has not proven by clear and convincing evidence that Anderson understood that he carried out his dealings in such a way as to not respect the financial structures involved. Accordingly, we do not sustain respondent's determination with regard to the additions to tax for fraud under section 6653(b). Issue 4. Anderson Is Liable for Additions to Tax for Negligence
As an alternative to her determination of fraud, respondent determined that the entire amount of the deficiencies determined against Anderson for both taxable years in issue in this case was due to negligence or intentional disregard of rules and regulations. For taxable year 1987, section 6653(a)(1)(A) and (B) provides *420 that if any portion of a deficiency in income tax was due to negligence, additions to tax are imposed in amounts equal to 5 percent of the underpayment and 50 percent of the interest due on the portion of the underpayment which is attributable to negligence. For the taxable year 1988, section 6653(a)(1) provides that if any portion of a deficiency in income tax was due to negligence, an addition to tax is imposed in an amount equal to 5 percent of the underpayment. For purposes of section 6653(a), negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The burden of proof is on the taxpayer to show that he acted prudently and exercised due care. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). We are not convinced that Anderson acted prudently and exercised due care. An ordinarily prudent person would not enter into a complicated business trust arrangement based solely on the representations by the organization promoting that trust and its counsel. Further, an ordinarily prudent *421 person, even one of modest education, would not have believed that the deposit of business receipts into an account that he totally controlled was a proper method of relieving those receipts from tax. Accordingly, we find that Anderson has failed to carry his burden of proof on this issue and thus sustain respondent's alternative negligence determination. Issue 5. Anderson Is Liable for Additions to Tax for Substantial Understatement
Section 6661 provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Under section 6661(b)(1)(A), a substantial understatement is defined for individual taxpayers as the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. The amount of the understatement is reduced by the portion of the understatement attributable to the tax treatment of any item if there was adequate disclosure of the relevant facts affecting treatment of the item in the return or a statement attached to it, or if there is or was substantial authority for the treatment. Sec. 6661(b)(2)(B). There is substantial authority for the treatment of an item only *422 if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions. Sec. 1.6661-3(b)(1), Income Tax Regs. A taxpayer's belief that there is substantial authority for the tax treatment of an item is irrelevant to this determination. Id. For this purpose, "authority" includes the Code, the regulations, revenue rulings, revenue procedures, administrative pronouncements, tax treaties and regulations thereunder, legislative history materials, and case law. Sec. 1.6661-3(b)(2), Income Tax Regs. Conclusions reached in treatises and legal periodicals, and opinions rendered by tax professionals, are not authority. Id. Hence, Izen's opinion letters do not constitute substantial authority for Anderson's actions. Accordingly, the amount of the deficiency in Anderson's Federal income taxes for 1987 and 1988 meets the definition of a substantial understatement for this purpose. Anderson did not have substantial authority for his position in any year in issue. Likewise, he did not adequately disclose any facts pertaining to the understated income on any of the tax returns as filed, or on any statements attached *423 to such returns. Accordingly, we sustain respondent's determination with respect to Anderson's liability for the additions to tax under section 6661. To reflect the foregoing and concessions by respondent, Decision will be entered for petitioner in docket No. 12089-91. Decision will be entered under Rule 155 in docket No. 12242-91. Footnotes
1. Joe Alfred Izen, Jr., withdrew as petitioners' counsel following an Order of the Court, dated Sept. 28, 1992, granting respondent's Motions to Compel Withdrawal of Petitioners' Counsel of Record for Conflict of Interest. Para Technologies Trust v. Commissioner, T.C. Memo. 1992-575↩. Mr. Izen did, however, assist and consult with petitioners' counsel during the course of trial of these consolidated cases.
1. Plus 50 percent of the interest due on the deficiency.↩
1. Plus 50 percent of the interest due on the deficiency.↩
2. A business trust is an unincorporated business organization created by an instrument by which property is held and managed by trustees for the benefit and profit of such persons as may be or become the holders of transferable certificates evidencing the beneficial interests in the trust estate. 156 A.L.R. 27↩ (1945).
3. Smith did not testify, nor did he appear, at trial.↩